STUART *et al.* v. KIRLEY *et al.*

1. Const. Art. 9, § 1, declares that the legislature shall provide for organizing new counties, and that before any change of county boundaries in counties already organized shall take effect, such change shall be submitted to the electors of the county or counties to be affected, and that counties now organized shall remain as they are, unless changed in accordance with these provisions. Laws 1897, c. 41, § 1, provides that the question of changing and defining the boundaries of S. county shall be submitted to the voters of such county, and Section 2 requires the board of county commissioners to give notice of such submission. *Held,* that the constitutional provisions as to elections applied to organized counties only, and electors of unorganized counties proposed to be included in S. county were not entitled to vote on such question.

2. Laws 1897, c. 41, providing for a change of county boundaries, is not invalid for failure of the legislature to provide for the apportionment of the indebtedness of the counties whose boundaries are sought to be changed thereunder.

3. Const. Art. 3, § 21, provides that no law shall embrace more than one subject, which shall be expressed in its title. Laws 1897, c. 41, entitled "An act changing and defining the boundaries of Stanley county,"

authorized the submission of the question of such change to the voters of the county. *Held,* that such act was not invalid as embracing more than one subject, not expressed in its title, since, the title to the act being general, it might properly include any provisions germane to the main subject.

4. Const. Art. 3, § 23, prohibits the legislature from passing special laws relating to specified subjects, and declares that, where a general law is applicable, no special law shall be enacted. *Held,* that since it was the function of the legislature to determine whether or not a general law could be made applicable to an unspecified subject, a special act (Laws 1897, c. 41) providing for a change of the boundaries of S. county, was not in violation of the constitutional provision.

5. Const. Art. 9, § 1, declaring that the legislature shall provide by general law for organizing new counties, changing county lines, etc., though mandatory, prescribes no penalty for failure to perform such duty, and hence such section does not render invalid a special act providing for the change of boundaries of a specified county.

(Opinion filed Nov. 22, 1899.)

Appeal from circuit court, Hughes county, Hon. LORING E. GAFFY, Judge.

Action by James Stuart and others against Joseph Kirley and others. From an order denying an injunction to restrain defendants from giving notice of the submission of the question of a change of county boundaries, plaintiffs appealed. Affirmed.

The facts are stated in the opinion.

*Thomas Drake, Joseph Donahue* and *Chas. E. DeLand,* for appellants.

Chapter 41, Laws of 1897, under which the proceedings sought to be enjoined herein were had, is in conflict with Section 1, Art. 9 of the constitution, in that it is a special and not a general law and is void. 3 Am. and Eng. Enc. of Law 696;

Contiri v. New Brunswick, 49 N. J. L. 58; Devine v. Cook Co., 84 Ill. 590; Topeka v. Gillett, 32 Kan. 431; Gibbs v. Morgan, 39 N. J. Eq. 126; State v. Parsons, 40 N. J. L. 1; Bellville v. Gregory. 15 Ill. 20; Vermont L. & T. Co. v. Whited, 49 N. W., 318; Suth. Stat. Con. § 121. It further conflicts with that provision of the constitution in that it fails to provide for the submission of the question of changing and defining the boundaries of Stanley county to the plaintiffs and other electors of the territory affected by the change as well as to the electors of Stanley county.

It is also unconstitutional for the reason that its title does not express its subject. § 21, Art. 3, Const. S. D.; State v. Becker, 3 S. D. 29.

Plaintiffs were entitled to an injunction restraining defendants from taking any steps looking toward the conducting of an election under this law. Searle v. City of Lead, 10 S. D. 312; High on Inj., §§ 895, 896, 1517, 574; Graves v. Jasper, 2 S. D. 414; Spilman v. Parkersburg, 14 S. E. 279; 2 Dill. Mun. Corp., §§ 914, 915, 916, 922; Buck v. Fitzgerald, 54 Pac. 942; Pom. Rem. and Rem. Rights, §§ 388-391; Soloman v. Fleming, 51 N. W. 304; Spelling Ex. Rel. § 613; Davenport v. Kleinschmidt, 13 Pac. 249; Statlhant v. Bauer, 70 N. W. 496; Streisguth v. Grit, 69 N. W. 1097; Kreischel v. Com'rs., 41 Pac. 486; Todd v. Ristad, 46 N. W. 73; Rickey v. Williams, 36 Pac. 480; State v Eggleston, 10 Pac. 3; 10 Am. & Eng. Enc. of Law, 968; Underwood v. Wood, 19 S. W. 405; Tucker v. Sellers, 30 N. E. 531; Stevens v. St. Mary, 36 Am St. Rep. 438; *In re* Sloan, 25 Pac. 930; Murphy v. E. Portland, 42 Fed. 308; Cent. Trust Co. v. Citizen R. Co., 80 Fed 218; VanDusen v. Fredley, 7 Dak. 322.

There was no provision in the law complained of for an adjustment of the indebtedness of Stanley, Nowlin, Sterling and Jackson counties, and it is therefore unconstitutional. 2 Disty on Tax, State v. Lake City, 25 Minn. 404; Wolf v. New Orleans, 103 U. S. 358; Myer on Vested Rights § 1486; United States v. Memphis, 97 U. S. 300; *In re* Flatbush, 60 N. Y. 398; Humphreys v. Huston Co., 4 Box 593; Allhands v. People, 82 Ill 234; Sleight v. People, 74 Ill. 47; Williams v. Commack, 27 Miss. 224; People v. Whyler, 41 Col. 351; Mills v. City of Weston, 22 Mo. 384; 1 Disty on Tax, pp. 29, 178, 184, 193; Mason v. v. Trustees, 4 Bush 408.

The granting or withholding of a temporary injunction herein is not discretionary, the validity of a statute and public rights being involved. 2 Spell. Ex. Rel. § 1040; 1 Spell. Ex. Rel. §§ 22, 23; Pom. Eq. § 424; Atty. Gen'l v. Railroad, 35 Wis. 425.

*John A. Holmes, Ivan W. Goodner* and *R. B. Stearns,* for respondents.

Counties are created by statute to aid in the administration of government, and unlike municipal corporations proper they are created without the solicitation or consent of the people who inhabit them. Askew v. Hale Co., 54 Ala. 641; Stenner v. LaPlato Co., 5 Colo. App. 379; McCormoc v. Robson Co. 90 N. Car. 444; Hamilton Co. v. Mighels, 7 O. St. 109. The power of the legislature over them is complete and subject to the limitations of the constitution the legislature has power to extend or limit their boundaries. Laramie Co. v. Albany Co., 92 U. S. 308; Chambers Co. v. Lu Co., 55 Ala. 534; Comstock v. Dan Co., 79 N. Car. 565; Cobs v. Madison Co, 1 Ill. 154; Duncombe v. Pringle, 12 Ia. 1; Howard Co. Div. 15 Kan.

194; State v. Hamilton, 40 Kan. 323; Bass v. Fountleroy, 11 Tex. 698; State v. McFadden, 23 Minn. 40; 7 Am. and Eng. Enc. of Law, 909; Wade v. Richmond, 18 Gratt. 583; Stiltz v. Indianapolis, 55 Ind. 515; Daly v. Morgan Co., 69 Md. 460; Smith v. McCarthy, 56 Pa. St. 359; St. Louis v. Russell, 9 Mo. 507; Blanchard v. Bissell, 11 O. St. 96; Powers v. Wood Co., 8 O. St. 286; Benoist v. St. Louis, 15 Mo. 668; St. Louis v. Allen, 13 Mo. 400.

The injunction *pendente lite* was properly denied by the trial court for the following reasons: First. Because in this state an injunction will not lie to restrain the holding of an election or the doing of any act by an officer in the calling or holding thereof. McCrary, Elec. § 386; People v. Galesburg, 48 Ill. 485; Harris v. Schryock,82 *id.* 119; Parmenter v. Bourne, 35 Pac. 586; Smith v. McCarthy, 56 Pa. St. 359; Weber v. Timlin, 37 Minn., 274; 2 High. Inj., §§ 1250, 1286, 1316, 1425; 6 Am. & Eng. Enc. of Law, 392; 1 Spell. Ex. Rel., §§ 613, 630; 2 Beach, Mod. Eq. Jur., § 672. Second. Our Statute not only fails to authorize injunctions in such cases, but expressly forbids them. § 4650 Comp. Laws; People v. Board, 75 Cal. 179. Third: Other remedies, plain, speedy and adequate were available to appellants. Walker v. Deveroux, 4 Paige 229; § 5348 Comp. Laws. Fourth. Injunction would have been ineffectual. Fifth. The granting of the injunction would have prevented the holding of the general election. Sixth. The plaintiffs had no rights in the premises sufficient to sustain injunction. State v. Thorson, 9 S. D. 123. Seventh. There was no sufficient showing of substantial and positive injury threatened to justify the intervention of a court of equity. 1 High. Inj. § 9; 1 Beach Mod. Eq. Jur. §§ 641, 642. Eighth.

There being no private right involved, the state alone is authorized to test the validity of the proceedings. 2 High. Inj. § 1249; Henry v. Steele, 28 Ark. 455; Aug. & Ames Corp. §§ 731, 765. Ninth. The granting of the preliminary injunction was not a matter of right, but of discretion in the court. Huron Water Works Co. v. Huron, 3 S. D. 610; Bank v. Bliss, 10 S. D. 178; 1 High. Inj. § 598; 2 Beach. Mod. Eq. Jur. § 646; Blue Bird Mining Co. v. Murray, 9 Mont. 468; Nelson v. O'Neal, 1 Id. 284; Atchison v. Peterson, 1 Id. 570; Hicks v. Michael, 15 Cal. 107; Hicks v. Compton, 18 Cal. 206; DeGoday v. Godey, 39 Cal. 167; Rogers v. Tenant, 45 Cal. 186; Hiller v. Collins, 63 Cal. 238.

Under a constitutional provision prohibiting special legislation where a general law is applicable it is for the legislature to determine whether a general law can be made applicable, and its judgment in the premises is final and conclusive. Evansville v. State. 118 Ind. 426; Wiley v. Bluffton, 111 Ind. 152; Brown v. City of Denver, 7 Colo. 305; People v. McFadden, 81 Cal. 489; Richman v. Supervisors, 77 Iowa 503; Owners of Lands v. People, 113 Ill. 296; State v. County Court, 50 Mo. 317; McGill v. State, 34 Ohio State 247; State v. Hitchcock, 1 Kan. 178; Beach v. Leachy, 11 Kan. 23; Gentile v. State, 29 Ind. 409; Johnson v. Board, etc., 107 Ind. 15; *In re* Greer, 58 Kan. 268; Rathbone v. Board of Commissioners, 83 Fed. Rep. 363.

CORSON, P. J. This is an action by the plaintiffs as residents, property holders, and taxpayers of the unorganized counties of Nowlin, Sterling, and Jackson, against the defendants Kirley, McGarry, and Hayes, as members of and constituting the board of county commissioners of Stanley county,

and Frost, as county auditor of said county, and the defendant Stanley county, to obtain an injunction enjoining and restraining said board from giving notice that the question of changing and defining the boundaries of said Stanley county would be submitted to the electors of Stanley county at the general election to be held in said county November 8, 1898, and enjoining defendant Frost, as such auditor, from preparing or sending out to the election officers, for use at said election, poll books, etc., with forms for the returns of the electors of said Stanley county upon the question of changing and defining the boundaries of the same, and from preparing ballots for use at said election in which shall be printed or inserted any question as to the change of the boundaries of Stanley county. The defendants, by answer, admitted substantially all of the material allegations of the complaint. Upon the complaint and answer an order to show cause was issued, and on the hearing the court denied the injunction, and from this order plaintiffs appealed to this court.

It appears from the complaint that the board of county commissioners of Stanley county and its county auditor were proceeding under the provisions of chapter 41 of the Laws of 1897, which provides that (section 1:) "At the general election in 1898 the question of changing and defining the boundaries of Stanley county as hereinafter provided in this act shall be submitted to the voters of Stanley county, and if a majority of the votes cast in the said county of Stanley shall be in favor of changing and defining the boundary lines of said Stanley county as in this act hereinafter provided, then the boundaries of said Stanley county shall be made as in this act hereinafter provided, and shall include all the territory that

shall be included in the boundaries hereinafter stated." Section 2 provides that the board of county commissioners of Stanley county shall give due notice that the question of changing and defining the boundaries of said county will be submitted to the voters of said county. Section 3 defines the boundaries of said Stanley county in case the proposed change in the boundary shall be adopted by the voters of said county. Section 4 provides what records shall be kept in said Stanley county. The unorganized counties of Nowlin, Sterling, and Jackson are not, in terms, mentioned in the act, but it is alleged in the complaint that the proposed new boundaries of Stanley county would embrace and include all the territory embraced and included within the boundaries of said unorganized counties. Counsel for respondents have presented a number of preliminary objections to this proceeding, but, in view of the fact that the important question involved in this case, namely, the constitutionality of the act referred to, was fully discussed by respective counsel in their oral arguments and in their printed briefs, we have concluded to consider and decide this case upon its merits, without expressing or indicating any opinion on the preliminary questions presented.

It is contended by the appellants that the law above referred to, under which the proceedings sought to be enjoined were being had, is in conflict with section 1, art. 9, of the constitution of this state, and therefore unconstitutionl and void, for the following reasons: (1) The law in question is not a general law, applicable to all counties of the state. (2) The question of the change in the boundaries was not proposed to be submitted to the electors of the unorganized counties of Nowlin, Sterling, and Jackson, but only to the electors of Stanley

county. (3) The title of the act is not sufficient to include the submitting of the question to the electors of Stanley county. (4) There was no provision in the law for an adjustment of the outstanding indebtedness of Stanley, Nowlin, Sterling, and Jackson counties. The section of the constitution referred to reads as follows: "The legislature shall provide by general law for organizing new counties, locating the county seats thereof and changing county lines; but no new counties shall be organized so as to include an area of less than twenty-four congressional townships, as near as may be without dividing a township or fractional township, nor shall the boundaries of any organized county be changed so as to reduce the same to a less area than above specified. All changes in county boundaries in counties already organized, before taking effect, shall be submitted to the electors of the county or counties to be affect ed thereby, at the next general election thereafter and be adopted by a majority of the votes cast in each county at such election. Counties now organized shall remain as they are unless changed according to the above provisions." Section 1, art. 9 Const. S. D. It will be observed that this section, in effect, provides for two classes of cases. In the first part provision is made for organizing new counties, locating the county seats thereof, changing county lines, and defining the area of such new counties, and prohibiting the legislature from changing the boundaries of organized counties so as to reduce the same to a less area than therein specified. The second part of the section refers to changes in county boundaries in counties already organized, and provides that, before taking effect, such changes shall be submitted to the electors of the county or counties to be affected thereby. In this case it appears from

the complaint that neither of the counties Nowlin, Sterling, nor Jackson was an organized county, hence neither of these counties comes within the second clause of the section above quoted. It is too well settled to require the citation of authorities that counties are local subdivisions of the state for governmental purposes, created by the sovereign power of the state, without the consent or concurrent action of the people who inhabit them, and their boundaries may be modified or changed by the legislature, unless prohibited by some constitutional provision. When, therefore, the legislature is restrained from changing the boundaries of counties already organized, unless the question of changing such boundary shall be sub mitted to the electors of the county or counties to be affected thereby, it necessarily follows that the boundaries of unorganized counties are left to be changed by the legislature without the question of such change of boundaries being submitted to the residents of such unorganized counties. It is also well settled that residents of such unorganized counties can exercise only such political rights as are conferred upon them by the legislature. There being no county organizations, ordinarily no methods are provided by which the residents of such counties can express their will upon any political subject. It is true that in this state certain political rights have been granted to the residents of such unorganized counties, but the right to vote upon the change of boundary lines in such unorganized counties has not been granted. Appellants contend that the provision in section 1, art. 9, of the constitution, which pro vides that all changes in county boundaries in counties already organized, before taking effect, shall be submitted to the electors of the county or counties to be affected thereby, necessarily

requires that such proposed change should be submitted to the voters of Nowlin, Sterling, and Jackson counties, as these counties are to be affected by the proposed change; but that clause in the section is limited to organized counties. The only organized county affected by the act we are considering is Stanley county, and it is that county alone that is to be affected by the change. As before stated under our statutes, ordinarily there are no electors in unorganized counties. Such an unorganized county cannot be said to be affected by changes in county lines made in an organized county, although a part or all of such unorganized county is included within the county lines of the organized county as changed. When, therefore, it speaks of the county or counties to be affected thereby, it includes only organized counties.

Appellants further contend that the law is in conflict with the constitution, in that it makes no provision for apportioning the indebtedness of the several counties. But this contention is not tenable, in that it is a matter entirely within the control of the legislature, even in the case of organized counties. If the legislature makes no provision for the apportionment of the debts of the several counties in the case of a change in the boundaries affecting them, it may be presumed that it did not deem such provision necessary. Laramie Co. Com rs v. Albany Co. Com'rs., 92 U. S. 308, 23 L. Ed. 552; Livingston v. School Dist., 9 S. D. 102, 68 N. W. 167; Lawrence Co. v. Mead Co., 6 S. D. 528, 62 N. W. 131.

It is further contended by the appellants that the law before referred to is unconstitutional and void for the reason that its title does not embrace all the subjects provided for in the act. Section 21, Art. 3, of the Constitution provides: "No law

shall embrace more than one subject which shall be expressed in its title." The title of Chap. 41 reads as follows: "An act changing and defining the boundaries of Stanley county." The law in question embraces only one subject, namely, the changing and defining the boundaries of Stanley county; but appellants insist that there is nothing expressed in the title relating to the submission of the question to the electors of Stanley county, and that, therefore, a subject is embraced in the law itself which is not expressed in the title, but we think this is too technical a construction of the provision in the Constitution. Where a general subject is mentioned in the title, it may include any number of provisions germane to the main subject, and which are capable of being united under the leading subject. Division of Howard Co., 15 Kan. 194; *In re* Section No. 6, (Minn.) 68 N. W. 323. It would often be difficult, if not impracticable, to enumerate in the title of a law all the various matters which may be provided for under the general title. For instance, an act for the incorporation of cities would necessarily embrace a great number of minor subjects; as, also a law prescribing for assessing and collecting taxes would necessarily embrace a great number of minor subjects connected with and germane to the main subject expressed in the title. To give to the constitutional provision the restrictive meaning claimed for it by the appellants, would make it difficult for the legislature to pass any law containing many minor provisions and subdivisions, unless each particular subject was expressed in the title. Our conclusion in this case is that the title of the act is sufficiently broad to include the submission of the question of the change in the boundaries to the voters of Stanley county.

It is also contended by the appellants that the law in controversy is in conflict with the provision of the constitution above referred to, in that it is limited to Stanley county only, and is not a general law upon the subject of changing county lines; but the legislature, by this section of the constitution, is not prohibited from passing special laws relative to the changing of boundaries in unorganized counties, nor is it in fact prohibited from passing a special law providing for the change of boundaries of organized counties.    The only special laws that are absolutely prohibited are those provided for in Section 23, Art. 3, of the Constitution.    The general provision at the close of that section that "in all cases where a general law can be applicable no special law shall be enacted" is designed as a guide to the legislature, and that body must itself determine whether or not a general law can be made applicable to the subject.    State v. Boone Co. Court, 50 Mo. 317; People v. McFadden, 81 Cal. 489, 22 Pac. 851; City of Evansville v. State, 118 Ind. 426, 21 N. E. 267, 4 L. R. A. 93; Brown v. City of Denver, 7 Colo. 305, 3 Pac. 455; Richman v. Supervisors, 77 Iowa, 513, 42 N. W. 422, 4 L. R. A. 445; Owners of Land v. People, 113 Ill. 296; McGill v. State, 34 Ohio St. 247; *In re* Greer, 58 Kan. 268, 48 Pac. 950.    Again while the language used in the first clause of Section 1, that "the legislature shall provide by general law for organizing new counties, locating the county seats thereof and changing county lines" constitutes a mandatory direction to the legislature, yet, so far as the same relates to changing county lines, it comes within the third class of constitutional provisions as defined in the opinion of the judges in Re State Census, 6 S. D. 540, 62 N. W. 129.    In that opinion this court said: "There appear to be three classes of provisions

in the constitution. The first class embraces constitutional provisions negative and prohibitory in their character, and are self-executing. All the laws, therefore, in force when the constitution was adopted, in conflict with these provision, were necessarily abrogated, and laws subsequently enacted in con flict therewith would necessarily be void in so far as they conflict with such provisions. The second class embraces such constitutional provisions as require certain proceedings to be had to render valid the enactment of laws or the accomplish ment of the purposes of the legislature. These provisions must be substantially complied with, or the laws enacted or the proceedings had may be invalid. The third class embraces provisions requiring the legislature to enact certain laws, but prescribes no penalty for a failure to perform the duty. These provisions may be in their nature mandatory, but there is no authority vested in any department of the government to enforce the command. The section under consideration comes within the latter class." It was also competent for the legislature to provide in effect, as it has done by the law in question, that the electors of Stanley county only would be affected by the change in the boundary line of the said county, and its decision is conclusive upon that question. People v. Nalley, 49 Cal. 478; State v. McFadden, 23 Minn. 40; Division of Howard Co., *supra*; Laramie Co. Com'rs v. Albany Co. Com'rs, *supra*; *In re* Section No. 6, *supra.*

The law in question is not prohibited by any constitutional provision, and, not being prohibited, must be upheld by this court. Upon this question Judge COOLEY says: "The rule of law upon this subject appears to be that except where the constitution has imposed limits upon the legislative power, it must

be considered as practically absolute, whether it operates according to actual justice or not in any particular case. The courts are not the guardians of the rights of the people of the state, except as those rights are secured by some constitutional provision which comes within the judicial cognizance. The protection against unwise or oppressive legislation, within constitutional bounds, is by an appeal to the justice and patriotism of the representatives of the people. If this fail, the people in their sovereign capacity can correct the evil; but courts cannot assume their rights. The judiciary can only arrest the execution of the statute when it conflicts with the constitution. It cannot run a race of opinions upon points of reason, right, and expediency with the lawmaking power. Any legislative act which does not encroach upon powers apportioned to the other departments of the government, being *prima facie* valid, must be enforced, unless restrictions upon the legislative authority can be pointed out in the constitution, and the case shown to come within them." Cooley, Const. Lim. p. 201.

It follows from these conclusions that the order of the learned circuit court in denying the injunction was correct, and the order of the circuit court is affirmed.