THE STATE OF NORTH DAKOTA EX REL. C. N. FRICH, ATTORNEY GENERAL, v. STARK COUNTY, NORTH DAKOTA, W. H. WALTON, GEORGE W. LEE AND F. KOESEL, AS AND CONSTITUTING THE BOARD OF COUNTY COMMISSIONERS OF SAID STARK COUNTY, AND J. S. WHITE, AS COUNTY AUDITOR OF SAID COUNTY.

**Constitutional Law.**

1. Section 168 of the constitution applies to organized counties only.

**Counties — Alteration in Boundaries.**

2. Chapter 69, p. 78, Laws 1903, is in conflict with section 168 of the constitution, because it authorized the extension of the boundaries of the organized county of Stark so as to include in the latter two unorganized counties and certain unorganized territory, without the consent of a majority of the voters of Stark county.

**Constitutional Law — Proceedings Under Void Law.**

3. The fact that a majority of the voters in Stark county voted for the extension of boundaries under the law did not avoid the constitutional objection, because, the law being void, all proceedings under it were also void.

**Constitutionality of a Law Tested by What Might Be, Not What Is, Done Under It.**

4. Where the constitutionality of a statute depends upon the power of the legislature to enact it, its validity must be tested by what might be done under color of the law, and not by what has been done.

**Special Legislation.**

5. Chapter 69, p. 78, Laws 1903, is a special law for the alteration of county boundaries, and is therefore in conflict with section 167 of the organic law.

Application by the State, on the relation of C. N. Frich, Attorney General, for writ of mandamus to Stark county and others.

Writ issued.

C. N. Frich, Attorney General, Newton & Dullam, R. N. Stevens and Voss & Hanley, for plaintiff.

The act is void under section 167 of the constitution. An act relating to persons or things as a class is general; one relating to persons or things of a class is special. Sutherland on Stat. Const. 149; Wheeler v. Philadelphia, 77 Pa. 338; Ex parte Lichenstein,

67 Cal. 359, 7 Pac. 728, 56 Am. Rep. 713; McEldowney v. Wyatt, 45 L. R. A. 609, 44 W. Va. 711.

The act violates section 168 of the constitution. It requires only a majority of the aggregate votes cast to effect the change; the constitution requires a majority in each county. Cons., section 168. It is not the form but effect of the statute that determines its special character. Edmonds v. Herbrandson, 2 N. D. 270, 50 N. W. 970, 14 L. R. A. 725; State v. Nelson, 26 L. R. A. 317; Angell v. Cass County, 11 N. D. 265, 91 N. W. 72.

The constitution requires a majority of all the legal votes in each county. The aggregate vote may favor a change, and one county —Stark for instance—oppose it, yet the act declares the change effected, while the constitution declares otherwise. The constitutional validtiy of the law is to be tested, not by what has been done under it, but what may, by its authority, be done. City of Beatrice v. Wright, 101 N. W. 1039; Stuart v. Palmer, 74 N. Y. 183, 30 Am. Rep. 289; Thomas v. Gain, 35 Mich. 155, 24 Am. Rep. 535; Davidson v. New Orleans, 96 U. S. 97, 24 L. Ed. 616; San Mateo County v. Southern Pac. R. R. Co., 13 Fed. 722; Brown v. City of Denver, 3 Pac. 455.

*M. L. McBride,* State's Attorney, *Guy C. H. Corliss* and *L. A. Simpson,* for defendants.

Statutes will be liberally construed with a view of sustaining their constitutionality. Western Ranches v. Custer County, 28 Mont. 278, 72 Pac. 659; Northwestern Mutual Life Ins. Co. v. Lewis and Clark Co., 28 Mont. 484, 72 Pac. 982, 98 Am. St. Rep. 572; University of California v. Bernard, 57 Cal. 612; Cooley on Const. Lim. 173; Sears v. Cottrell, 5 Mich. 259; Fletcher v. Peck, 6 Cranch, 87, 3 L. Ed. 162.

Section 167 of the constitution as to organizing new counties and changing county lines is a mere direction to the legislature and not a restriction upon its power. Section 168 of the constitution, requiring changes in boundaries of counties to be made after a vote by the people, relates to the electors of organized counties, because there are no electors in unorganized counties. Stuart et al v. Kirley (S. D.) 81 N. W. 147; Harris v. Schyrock, 82 Ill. 119; Town v. People, 102 Ill. 648; State v. McFadden, 23 Minn. 40.

Unorganized counties may be dealt with by the legislature without submitting the matter to the people. State v. McFadden, supra; State v. Parker, 25 Minn. 215; State v. Honerud, 66 Minn. 32.

ENGERUD, J. This is an original proceeding in this court, commenced in the name of the state, on the relation of the attorney general, against the county of Stark and the commissioners and auditor of that county, to obtain from this court an injunction perpetually restraining the defendant officers of Stark county from assuming or exercising jurisdiction, as officers of that county, in or over certain territory which the defendants assert has been added to Stark county by proceedings had pursuant to chapter 69, p. 78, Laws 1903. The law was passed by the eighth legislative assembly, and is entitled "An act changing and defining the boundaries of Stark county." It provided for the submission to the voters of Stark county, and to those residing in the unorganized territory affected by the act, the question of changing the boundaries of Stark county so as to include in that county all the territory lying within the unorganized counties of Hettinger and Dunn, and twelve congressional townships which have never heretofore been within the limits of any county. If a majority of the aggregate votes cast at such election favored the change, then the above-mentioned unorganized territory should become part of Stark county. The governor was authorized to designate polling places and election officers for the unorganized territory. The question was duly voted upon in accordance with the provisions of the act. In Dunn county there was a majority of one against the change, but there was a majority of sixty-five in Hettinger county, and 520 in Stark county, in favor of the change. It is conceded that the proceedings were regular in all respects, and the only ground upon which the state denies that the additional territory has become part of Stark county, and seeks to enjoin the officers of the latter county from extending their jurisdiction over it, is that the said legislative act authorizing the extension of the boundaries of Stark county is utterly void and of no effect, because it is in conflict with several provisions of the constitution of this state. The constitution contains the following provisions, among others, with reference to counties:

"Sec. 166. The several counties in the territory of Dakota lying north of the seventh standard parallel, as they now exist, are hereby declared to be counties of the state of North Dakota.

"Sec. 167. The legislative assembly shall provide by general law for organizing new counties, locating the county seats thereof temporarily, and changing county lines; but no new county shall be organized, nor shall any organized county be so reduced as to include an area of less than twenty-four congressional townships,

and containing a population of less than one thousand bona fide inhabitants.   *   *   *

"Sec. 168.   All changes in the boundaries of organized counties before taking effect shall be submitted to the electors of the county or counties to be affected thereby at a general election and be adopted by a majority of all the legal votes cast in each county at such election; and in case any portion of an organized county is stricken off and added to another, the county to which such portion is added shall assume and be holden for an equitable proportion of the indebtedness of the county so reduced."

At the time of the passage of the act in question, Stark county was one of the organized counties of this state, having been organized while this state was part of Dakota territory.   Hettinger and Dunn counties have never had any county organization, but each of them was created and their boundaries established by the legislature of Dakota territory.   The present boundaries of Hettinger county were established by chapter 39, p. 58, Laws 1883, and those of Dunn county by chapter 3, p. 226, Laws 1885.

The relator contends that the act in question conflicts with section 168 of the constitution, in that it permits the enlargement of the boundaries of the organized county of Stark, and the obliteration of Hettinger and Dunn, without the consent of a majority of the voters in each of the three counties.   The argument is that, under section 168, the lines of an organized county cannot be changed so as to diminish or increase the area of an adjacent unorganized county, unless the proposed change is consented to by a majority vote of the electors in the unorganized county affected, as well as by a majority of those in the organized county.   We do not think section 168 bears that construction.   In our opinion, that section relates only to organized counties, and prohibits any change in the boundaries of an organized county without the consent of a majority of the voters therein; and, if two or more organized counties are affected, then the change must be consented to by a majority of the voters in each of such organized counties.   The act would not have violated this section of the constitution, had it made no provision for submitting the proposed change of boundaries to the residents of the unorganized counties.   To that extent we disagree with plaintiff's argument.   But the act is still vulnerable to the objection that it provides for a change of the boundaries of Stark county without the consent of a majority of the voters in that county.   The act provides that the change of bounda-

ries shall take place if a majority of the aggregate votes cast throughout all the territory affected shall be in favor of the change. Under the provisions of this act there might have been a majority of sixty-three votes in Stark county against the proposed extension of boundaries, yet the change would take place, because the majority of sixty-five in Hettinger county for the change would have overcome the combined majority against the change in the other two counties. It is no answer to the objection to urge that the result of the election showed that a majority of the voters of the only organized county affected consented to the change, and hence the constitutional rights of the inhabitants of Stark county, who alone were in a position to claim the protection of section 168, have not been infringed by the actual operation of the act. This section of the organic law in effect prohibits any legislation which will permit the alteration of the boundaries of an organized county without the consent of a majority of the voters thereof. A statute which makes that result possible is void, because it ignores the constitutional limitation in that respect upon the powers of the legislature. It is a question not entirely as to whether the constitutional rights of one or more individuals have been infringed in a particular case by proceedings under color of law, but it is a question of power in the legislature to enact the law under which the proceedings have been had. It is true that section 168 merely provides that the proposed change of county boundaries pursuant to law shall not take effect until the proposed change has been agreed to by a majority vote. If the constitution had provided how and when that vote should be taken, so as to be self-executing, then it might perhaps have been well argued that such constitutional provision as to the conditions precedent to the taking effect of the proposed change should be read into and become part of any statute which provided for an alteration of the boundaries of organized counties, and that, if any provisions of the statute were in conflict with this organic law, such statutory provisions should be disregarded, without nullifying the entire law. Such are not, however, the conditions here. The constitution makes no provision as to how and when the vote shall be taken, but leaves that to the discretion of the legislature. It is clear, therefore, that it is a necessary condition to the validity of every statute which authorizes a change in the boundaries of organized counties that an election be provided for, either by the act itself or elsewhere, and that the consent of a majority of the voters be made a condition precedent

to the taking effect of the change authorized by the law. The act in question provides for an election, but does not comply with the other condition—that the consent of the majority of the voters of Stark county shall be necessary to effect the change.

It was urged in argument that we should assume that the legislature had the provisions of section 168 of the constitution in mind when the law was passed, and intended to comply with its mandates, and therefore that the language of the act declaring that the proposed change of boundaries should take effect if a majority of the aggregate votes cast should favor the change should be construed to mean merely that, in addition to the consent of a majority of the voters in Stark county, the additional condition was imposed that there should also be required a majority of the aggregate votes cast throughout all the territory affected. The language of the act does not warrant such a construction. The act provides (section 1) that "the question of changing and defining the boundaries of Stark county as hereinafter provided in this act, shall be submitted to the voters of said county, and of the unorganized counties and parts of unorganized territory affected hereby, and if a majority of the aggregate vote cast at said election shall be in favor of changing and defining the boundary lines of Stark county, then the boundaries of said Stark county shall be as in this act hereinafter provided, and shall include all the territory hereinafter stated." The language is plain, unambiguous and specific, and incapable of any other construction than that the majority of the entire votes cast throughout the whole territory affected should be sufficient to effect the proposed change, even though a majority in Stark county were adverse thereto. The validity of a law, where its validity depends upon the power of the legislature to enact it, must be tested not by what has been done under it, but by the things which it authorizes to be done. City v. Wright (Neb.) 101 N. W. 1039. It is obvious that, if the legislature had no power to authorize a change of the boundaries of Stark county in the manner or on the conditions provided in this statute, then the act was a nullity from the beginning, and all proceedings under it were likewise nullities. The constitution, in effect, forbids the enactment of such a law, and the prohibition is no less effective because the evil which the constitutional limitation was designed to prevent did not happen in this instance to result from the prohibited legislation. The statute involved in Stuart v. Kirley, 12 S. D. 245, 81 N. W. 147, differed from the statute before us, in this: That

it did not give the electors in the unorganized counties affected any vote on the proposed change of the boundaries of the organized county, and hence was not vulnerable to the objection that it permitted a change of boundaries without the consent of a majority of the voters in the organized county.

The foregoing is sufficient to dispose of the case, but, inasmuch as the point was fully argued by counsel, and as we are agreed that the act in question is also void because it is special legislation prohibited by section 167 of the constitution, we will give our reasons for that conclusion. Bare inspection shows that it is a special law authorizing a change of the boundaries of the organized county of Stark. Can that result be accomplished by special legislation? Counsel for the state contend—and we think the contention is sound—that section 167, hereinbefore quoted, prohibits special legislation on that subject. Section 167 is not only a mandate requiring the legislature to make provision by general law for the organization of new counties, location of county seats, and changing county lines, but it is also a prohibition against special legislation on those subjects. It is true that the language of the section is not restrictive or prohibitive in express terms; but section 21 of the constitution declares that "the provisions of this constitution are mandatory and prohibitive unless by express words, they are declared to be otherwise." This section recognizes and establishes a sound rule to be observed in the interpretation of the organic law. It is a rule applicable alike to statutory and constitutional law that when the law directs something to be done in a given manner, or at a particular time or place, then there is an implied prohibition against any other mode or time or place for doing the act. The rule applies with peculiar force to the interpretation of constitutional law. Denney v. State, 144 Ind. 503, 42 N. E. 929, 31 L. R. A. 726; People v. Hutchinson, 172 Ill. 486, 50 N. E. 599, 40 L. R. A. 770; People v. Spruance, 8 Col. 307, 6 Pac. 831; Collins v. Henderson, 11 Bush, 74; Opinions of the Justices, 18 Me. 459, 464; Page v. Allen, 58 Pa. 338, 98 Am. Dec. 272; Varney v. Justice (Ky.) 6 S. W. 457; Cooley's Constitutional Limitations (7th Ed.) p. 109 et seq. Courts have often departed from the rule, and, even when dealing with constitutional provisions, have assumed to declare such provisions either mandatory or directory or nonrestrictive, according as one view or the other seemed to agree with the court's ideas of what the law ought to be. As said by Justice Cooley: "The courts tread upon dangerous ground when they venture to ap-

ply the rules which distinguish directory and mandatory statutes to the provisions of a constitution." Cooley's Constitutional Limitations (7th Ed.) p. 114. It was doubtless for the purpose of insuring in this state an unvarying observance of the rule mentioned that the rule was embodied in the constitution itself.

Our attention has been called to the case of Stuart v. Kirley, 12 S. D. 245, 81 N. W. 147, which involved the construction of section 1, art. 9, of the constitution of South Dakota, which is similar in terms to our sections 167 and 168. The constitution of that state contains no provision corresponding to the rule set forth in section 21 of the constitution. This difference between the constitutions of the two states renders the decision of less weight with us than it otherwise would have.

As to whether or not unorganized counties are included in the prohibition against special legislation, we express no opinion.

A writ will be issued as prayed for by the relator. All concur. (103 N. W. 913.)