[File No. 6990]

EMANUEL HERR, a Taxpayer of the State of North Dakota, and others similarly situated, Appellant, v. FERDINAND RUDOLF, the State of North Dakota, doing business as the Bank of North Dakota, Otto Krueger, State Treasurer, as Trustee for the State of North Dakota, Fred G. Aandahl, Governor of the State of North Dakota, Nels G. Johnson, Attorney General of the State of North Dakota, and Math Dahl, Commissioner of Agriculture and Labor of the State of North Dakota, members constituting the Industrial Commission of the State of North Dakota, Respondents.

(25 NW2d 916, 169 ALR 1388)

Opinion filed January 22, 1947

*J. K. Murray,* for appellant.

*Nels G. Johnson,* Attorney General, *P. O. Sathre,* Assistant Attorney General and *Robert Birdzell,* Special Assistant Attorney General, for respondent.

NUESSLE, J. This action was brought to restrain the defendants, the State of North Dakota, doing business as the Bank of North Dakota, Otto Krueger, State Treasurer as trustee for the State of North Dakota, Fred G. Aandahl, Governor of the State of North Dakota, Nels G. Johnson, Attorney General of the State of North Dakota, and Math Dahl, Commissioner of Agriculture and Labor of the State of North Dakota, members constituting the Industrial Commission of the State of North Dakota, from selling a certain tract of land to the defendant Rudolf at private sale at a price lower than could be obtained at public sale. A temporary restraining order was issued. The case was tried to the court. Judgment was ordered and entered for the defendant. Whereupon the plaintiff appealed.

There is no dispute as to the facts. Johan Rudolf owned the Southwest Quarter (SW$\frac{1}{4}$) of Section 2, Township 131, Range 72 West, in McIntosh County, North Dakota. He made a loan from the Bank of North Dakota, executing a mortgage on the land as security therefor pursuant to the provisions of Chapter 6–09, ND Rev Code 1943. Thereafter, pursuant to the provisions of Chapter 54–30, ND Rev Code, the Bank assigned this mortgage to "the State Treasurer of North Dakota and his successors in office in trust as security for bonds to be issued under the designation of Bonds of North Dakota Real Estate Series, as provided by law." There was default in payments. Whereupon the mortgage was foreclosed and the land was bid in by and sold to the state treasurer as trustee for the State of North Dakota. Section 54–3019, ND Rev Code 1943. And no redemption having been made a sheriff's deed was issued to him in 1938. Thus the land became an asset of the Real Estate Bond Sinking Fund. See, §§ 54–3014 and 54–3023, ND Rev Code 1943.

The defendant Ferdinánd Rudolf is the son of Johan Rudolf. He was in possession of the land in question as tenant when Chapter 205, Session Laws 1943 was enacted. The plaintiff Herr is a citizen and taxpayer of the State of North Dakota. He is a farmer owning and living on a farm adjacent to the quarter section involved in this action. He desires to buy this land and made an offer to the Bank of North Dakota as agent for the

state treasurer in the manner prescribed by the statute to pur-
chase it at a price of $2600, and if the land were sold at public
auction to bid therefor and pay if necessary substantially more
than that sum. The land was appraised by the Bank of North
Dakota and its value was fixed at $2500. This appraisal was
approved by the Industrial Commission. The defendant Rudolf,
claiming a statutory preference right to buy at the appraised
value, (see § 6–0931, Rev Code 1943), asserted this claim and
the other defendants conceding the right are intending to and
will sell to him at that price notwithstanding that a substantially
larger amount will be realized if the land is offered at public sale.

A large amount of real estate bonds have been issued by the
State of North Dakota. These must be paid from the Real
Estate Bond Sinking Fund. There is a large current deficiency
in this fund and the fund is now being supplemented by the pro-
ceeds of taxes assessed and levied against all taxable property
within the State of North Dakota.

Section 6–0931, ND Rev Code 1943, enacted as Chapter 205,
Session Laws 1943, provides for the sale of land held by the
state treasurer as trustee and the manner in and the terms on
which the sale shall be made. Subsection 1, § 6–0931, provides:

"All such lands shall be appraised by the Bank of North
Dakota. Such appraisal shall be submitted to the industrial
commission for its approval or rejection, and all land not pur-
chased by the present tenant, the former owner, his widow, or
lineal descendants of the first degree, as herein provided, shall
be sold for not less than the appraised value to the highest bid-
der at public sale conducted at the front door of the court house
in the county seat of the county wherein the lands to be sold lie,
between the hours of nine o'clock in the forenoon and four o'clock
in the afternoon;"

And subsection 2 thereof, provides:

"The Bank of North Dakota shall cause to be published once
each week for a period of two successive weeks, in a legal news-
paper published within the county in which said land is situated,
a notice of such sale, properly describing said land, together
with the appraised value thereof, and the terms and conditions

of sale. The last publication of said notice shall be at least ten days prior to the date of sale. In case no legal newspaper is published within said county such notice shall be published in the legal newspaper which is published nearest to the county seat at which such sale is to be made. The former owner, or any lineal descendant in the first degree of such former owner, of the land to be sold, or the tenant of such former owner, if such person is the tenant at the time of the passage of this section, shall be notified by the Bank of North Dakota of such sale ten days previous to the day of sale, and shall be permitted to purchase the land or lands to be sold at the appraised value on the terms of sale stated in subsection 4 of this section. If the fair market value of such lands as shown by the appraisal made in accordance with the provisions of subsection 1 of this section is less than the sum of the state funds invested therein, such lands may be sold to the former owner, his widow, or lineal descendants of the first degree, who are tenants on such land at the time of the passage of this section, for the fair market value as determined by said appraisal on the terms of sale stated in subsection 4 of this section. If such person, as herein described, does not avail himself of such opportunity prior to the date of sale, he shall be permitted to be a bidder at the public sale as set forth in subsection 3 hereof; "

The defendants take the position that pursuant to the provisions of the statute above quoted the defendant, Ferdinand Rudolf, as a lineal descendant in the first degree of the former owner and a tenant on the land at the time of the passage of Chapter 205, Session Laws 1943, is clothed with a preference right which entitles him to purchase the land at the appraised value regardless of whether a greater price may be obtained from other buyers. On the other hand, the plaintiff Herr, as a taxpayer in his own behalf and on behalf of all others similarly situated, challenges the constitutionality of that portion of the statute on which the defendant Rudolf predicates his claim. Plaintiff contends that the land in question is an asset of the Real Estate Bond Sinking Fund; that there is a deficiency in that fund; that this deficiency must be made up from the pro-

ceeds of taxes assessed against his property and all other property within the state; that he and all other property owners are thereby adversely affected; that the statute violates the provisions both of the Constitution of the United States and of the Constitution of North Dakota, and he particularly stresses its violation of Section 20 of the Constitution of the State of North Dakota providing that no citizen or class of citizens shall be granted privileges or immunities by the legislative assembly which upon the same terms shall not be granted to all citizens; and of Section 185 of the State Constitution providing that neither the State nor any county or any other political subdivision shall loan or give its credit or make donations to or in aid of any individual, association or corporation except for the necessary support of the poor.

At the threshold of the case we are met by the defendants' challenge to the right of the plaintiff to institute this action. They say he has no legal capacity to do so and especially none to ask that state officers be restrained from acting pursuant to statutory direction and authority. This court, however, has often held that where public funds are about to be unlawfully expended a taxpayer in his own behalf and on behalf of his fellow taxpayers may challenge the proposed expenditure and invoke the powers of equity to prevent the officers about to do so from making it. See, Engstad v. Dinnie, 8 ND 1, 76 NW 292; Storey v. Murphy, 9 ND 115, 81 NW 23; Roberts v. Fargo, 10 ND 230, 86 NW 726; Hart v. Wyndmere, 21 ND 383, 131 NW 271, Ann Cas 1913D 169; McKinnon v. Robinson, 24 ND 367, 139 NW 580; Anderson v. International School Dist. 32 ND 413, 156 NW 54, LRA1917E 428, Ann Cas 1918A 506; Bartelson v. International School Dist. 43 ND 253, 174 NW 78; Weeks v. Hetland, 52 ND 351, 202 NW 807; Lang v. Cavalier, 59 ND 75, 228 NW 819. It is true that these cases do not involve the expenditure of state funds but we can see no reason why the fact that the instant case does should render the rule there applied inapplicable here. See in this connection, Pierce v. Hagans, 79 Ohio St 9, 86 NE 519, 36 LRA NS 1, 15 Ann Cas 1170, and

cases cited in note; Asplund v. Hannett, 31 NM 641, 249 P 1074, 58 ALR 573 (contra), and cases cited in note. We therefore hold that the defendants' challenge must be overruled. Thus it becomes necessary to examine into the merits of the case.

The State, of course, may own and hold property. Unless prohibited by some constitutional provision it may dispose of it just as any citizen may dispose of his property. State ex rel. Equity Farms v. Hubbard, 203 Minn 111, 280 NW 9. So, unless thus prohibited, the State may choose to whom it will sell when there are competing buyers for any property it is offering for sale. In the instant case, however, the land is an asset of a trust fund. Whatever may be realized from its sale is by law devoted to a particular purpose—the payment of the real estate bonds issued and sold as provided in Chapter 54–30, supra. The faith and credit of the State are pledged for the payment thereof, both principal and interest. Section 54–3010, ND Rev Code 1943. So if the assets of the fund are insufficient to meet the requirements for which it was created—and here it appears that they are insufficient—the State must supplement them and can do so only by an appropriation for that purpose out of the proceeds of taxes. Thus every contributing taxpayer is affected. And thus the trustee and custodian of the fund, the dissipation of which will affect taxpayers to their detriment, are in duty bound to realize the best price obtainable for the assets of the fund. And the statute so requires. See, § 54–3023, ND Rev Code 1943.

The plaintiff contends that the statute, under which the defendant Rudolf claims a right of preference, violates Section 20 of the Constitution of North Dakota. He says that it in effect confers upon a narrow class of citizens, of whom Rudolf is one, privileges which no other persons in the State may enjoy; that the statute is thus unreasonably discriminatory.

In State ex rel. Dorval v. Hamilton, 20 ND 592, 129 NW 916, this court said:

"It is doubtless true that, notwithstanding constitutional inhibitions such as those contained in Sections 11 and 20, ND

Const, the legislature may provide a certain classification of citizens to be differently affected by the same general rule. The limitation imposed upon legislation of this character is, however, that any classification provided as the basis for distinctive or special operation of the law must be natural, not artificial. 'It must stand on some reason having regard to the character of the legislation.' Edmonds v. Herbrandson, 2 ND 270, 50 NW 970, 14 LRA 725. 'It must rest on some difference which has a reasonable and just relation to the act in respect to which the classification is proposed. It is not necessary that a law shall operate upon all alike, but . . . it must operate alike upon all who are in like situation. The law need not have a universal operation, but it must be uniform. Proper classification is permitted, but arbitrary and unreasonable discrimination is forbidden.' Beleal v. Northern P. R. Co. 15 ND 318, 108 NW 33, 11 Ann Cas 921. It must 'rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis.' Gulf C. & S. F. R. Co. v. Ellis, 165 US 155, 41 L ed 668, 17 S Ct 255; Powers Elevator Co. v. Pottner, 16 ND 359, 113 NW 703." See also Figenskau v. McCoy, 66 ND 290, 265 NW 259.

Summed up, these cases hold that where a statute creates a classification of citizens to be differently affected by the same general rule the classification must be natural and not artificial, reasonable and not arbitrary or capricious and "must rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed." Can it be said that the statute here in question conforms to these requirements? Of course the statute is presumptively valid and it must be construed, if that reasonably can be done, in such a way as to render it valid. But, viewing it from every angle and giving it every possible favorable intendment, we cannot escape the conclusion that it offends against the provisions of Section 20 of the Constitution of the State.

The statute is peculiar. It provides when and the manner in which lands held by the state treasurer as trustee shall be

sold. The Bank of North Dakota, as agent for the trustee, may of its own motion or upon application of a bona fide bidder, offer such lands for sale. The lands first must be appraised to determine their fair market value. They must be sold at public sale, duly advertised, to the highest bidder, for not less than the appraised value. The statute, however, excepts from the requirements that the sales be public and to the highest bidder: (1) sales to tenants of the former owner of the land who were tenants at the time of the enactment of the statute, to the former owner of the land, and to lineal descendants of the first degree of the former owner, all of whom may buy at private sale prior to the advertised date at the appraised value, if that value be not less than the amount of state funds invested in the land, and (2) sales to the former owner, to his widow, and to his lineal descendants of the first degree, who were tenants on the land at the time of the enactment of the statute, all of whom may buy at the appraised value if that value be less than the amount of the state funds invested in the land. Thus the members of the very narrow class created by the statute are granted privileges which cannot be exercised by anyone without that class. It is urged in justification of this grant that the legislature intended thereby to hasten the sale of the lands owned by the State as assets of the Real Estate Bonding Fund, thus converting them into liquid form and rendering them more readily available to satisfy the purposes of the fund and, at the same time, restoring the lands to the tax lists since, while they are held by the State, they are not subject to taxation. See, § 176, Constitution of North Dakota.

Of course it is the duty of the trustee to realize as much as possible from the sale of the lands. But the right conferred upon the members of the class created by the statute to buy at private sale at the appraised value by eliminating competitive bidding, lessens, if it does not destroy, the probability of realizing the best possible price obtainable. The instant case speaks for itself in that respect. So far as the alleged purpose of the statute to restore the lands to the tax lists is concerned, that purpose is hindered rather than furthered by the granting of

the privilege to buy at private sale at the appraised value. Manifestly, there is less probability of the lands being sold and restored to the tax lists when the members of the narrow class created by the statute are privileged to buy at the appraised price without competition. An unprivileged buyer knowing that a tract of land could be sold to another at the appraisal price, regardless of how much he might bid for it, would have no incentive to go to the trouble and expense of having the land offered for sale. And, on the other hand, if the land were to be sold at public sale to the highest bidder those now favored by the statute would have the right to bid thereat and buy at the appraised price if there were no other bids, and in any event if their bid were the highest.

Indeed, it is difficult to discover the legislative purpose behind the statute. The term "former owner" as used in the statute must mean, not necessarily the mortgagor who borrowed from the bank and gave the land as security, but the owner, whether the mortgagor or his successor in interest, at the time of the issuance of deed to the state treasurer as trustee. The statute requires that the land be sold for not less than the appraised value, at public sale, to the highest bidder. It excepts, however, from these two latter requirements sales to members of the class created by the statute. Accordingly, sales may be made to tenants of the former owner at private sale at the appraised value, provided they were tenants at the time of the enactment of the statute. But if at the time the statute was enacted the land was occupied by tenants of the trustee who had not been tenants of the former owner, those tenants are not accorded this privilege. Nor are tenants who became such subsequent to the enactment of the statute. And the former owner of the land may buy at private sale at the appraised value and so may lineal descendants of the first degree of the former owner, where the appraised value is not less than the amount of state funds invested in the land. Again, where the appraised value is less than the amount of state funds invested in the land it may be sold at the appraised value at private sale to the former owner, to his widow—though the widow is not thus privileged

where the appraised value is not less than the amount of state funds invested—and to those lineal descendants of the former owner of the first degree who were tenants on the land at the time of the enactment of the statute. But no tenants may buy at the appraised value at private sale unless they are lineal descendants of the former owner of the first degree. We think that the foregoing analysis of the provisions of the statute that are challenged by the plaintiff demonstrates the unreasonable, capricious and arbitrary character of the classification. Surely there is nothing in those provisions that will at all tend to further either the purpose declared in the title of the act, Chapter 205, Session Laws 1943—to sell to bona fide farmers, for none of the individuals favored by the statute are necessarily farmers— or those purposes which were urged on argument by the respondents as actuating the legislature in enacting it.

The plaintiff further insists that the statute violates Section 185 of the Constitution of North Dakota in that it makes a donation to a privileged buyer by enabling him to buy at the appraised value, though others are ready and willing to pay a greater price. We think the contention is well grounded. The instant case clearly demonstrates this. The plaintiff offers to pay $2600 for this particular tract of land and is ready and willing to buy it at whatever amount it may be necessary for him to bid up to $3000. Yet, under the statute, the defendant Rudolf is granted the privilege to buy it for $2500, and the defendants, the State Treasurer as trustee, the Bank of North Dakota, and the members of the Industrial Commission, have conceded this right and intend to and will sell the land to Rudolf at the latter figure. As a consequence the trust fund will suffer a certain loss of $100 and a possible loss of $500 and the State must make this loss good. Thus Rudolf in effect will receive a donation from the State in the amount of the loss contrary to the prohibition contained in Section 185 of the Constitution.

This suit is primarily a taxpayer's suit. It is brought by the plaintiff in his own behalf and in behalf of fellow taxpayers jointly interested with him. Whether his interest is great or small is immaterial. "Where a suit is brought by one or more

for themselves and all others of a class jointly interested, for the relief of the whole class, the aggregate interest of the whole class constitutes the matter in dispute." State ex rel. Linde v. Hall, 35 ND 34, 159 NW 281; Ellingham v. Dye, 178 Ind 336, 99 NE 1, Ann Cas 1915C 200; 52 Am Jur Taxpayers' Actions, §§ 3 et seq. If the operation of the statute is detrimental to plaintiff's interest and to that of his fellow taxpayers, he may challenge it on any constitutional ground. And where the constitutionality of a statute depends upon the power of the legislature to enact it, its validity must be tested by what might be done under color of the law and not what has been done. State ex rel. Frich v. Stark County, 14 ND 368, 103 NW 913.

It is true the plaintiff in the instant case has a dual interest in the outcome of this action—as a taxpayer and as a possible purchaser of the land involved. But whatever his personal interest as a possible purchaser may be, that does not defeat his right as a taxpayer to challenge the statute in his own behalf and in behalf of his fellow taxpayers. The motive that activated him in doing so is immaterial. Engstad v. Dinnie, 8 ND 1, 76 NW 292; Mitchell v. Youmans, 45 ND 92, 176 NW 101.

For the reasons above set out we hold the plaintiff is entitled to the injunctive relief for which he prays in his complaint, but is not entitled to a judgment directing that the land involved be advertised and sold pursuant to the provisions of the statute, the constitutionality of which he challenged.

The judgment will, therefore, be reversed and the case remanded to the district court for further proceedings not inconsistent with this opinion.

CHRISTIANSON, Ch. J., and BURR and BURKE, JJ., concur.

MORRIS, J. (dissenting). This is an action for injunctive relief to prohibit the Bank of North Dakota from selling a certain piece of real estate to the defendant, Ferdinand Rudolf, at private sale pursuant to the provisions of § 6–0931, Rev Code ND 1943. The plaintiff brings this action in two capacities, as a prospective purchaser of the land and as a taxpayer of the State of

North Dakota. The first is a purely private and personal capacity, the second is tinged with public interest. The standing that he may have to appear in these capacities rests upon separate and distinct principles of law. Let us not confuse them.

The plaintiff challenges the constitutionality of the statute on two grounds. He contends that by giving to the defendant Rudolf a preference to purchase the land at private sale the statute is discriminatory and violates Sec. 20 of the North Dakota Constitution. In his capacity as a prospective purchaser of the land he is estopped from challenging the constitutionality of the statute. It is a basic principle of constitutional law that one cannot both assail a statute and rely upon it in the same proceeding. State ex rel. Brontrager v. Mundy, 53 ND 249, 205 NW 684; Hurley v. Commission of Fisheries, 257 US 223, 66 L ed 206, 42 S Ct 83.

In his complaint the plaintiff alleges:

"That on May 7, 1945, the plaintiff Emanuel Herr caused to be served on the defendant, The Bank of North Dakota, a certain written demand that the said land be advertised for sale so as to afford bidders an opportunity to bid for and purchase the same at public auction. That the said demand stated inter alia, that it was the purpose and intention of the plaintiff to purchase said lands and to bid for the same a sum in excess of Twenty-five Hundred Dollars ($2500.00), if it should be necessary to bid that much in order to acquire said lands. That it now is the intention of this plaintiff to acquire said lands and that he is ready and willing to bid and to pay therefor the sum of Twenty-six Hundred Dollars ($2600.00), or as large a sum in excess of Twenty-six Hundred Dollars ($2600.00), as may be necessary to consummate acquisition of said land. That he has deposited with the defendant, The Bank of North Dakota, the sums of money required to be deposited with his said offer to buy of April 10, 1945, to make such offer, and the application embodied therein, legally effective. That the defendants have refused, and continue to refuse, to proceed pursuant to this plaintiff's offer to buy dated April 10, 1945, and his demand dated May 7, 1945, and that the said defendants intend to proceed with sale

of said lands to the defendant, Ferdinand Rudolf, for the purchase price of Twenty-five Hundred Dollars ($2500.00), and will proceed with such sale and consummate the same for said purchase price unless prevented from so doing by order of the Court."

No other or prior law authorizes the procedure which the plaintiff sets forth in his complaint or directs a sale at public auction. Thus it is apparent that the plaintiff seeks to compel the Bank of North Dakota to offer the land in question for sale under the same statute which he challenges as providing an unconstitutional classification in favor of the defendant.

Plaintiff's challenge to the constitutionality of the statute must fall for a still further reason.

"It is well settled that a person who is seeking to raise the question as to the validity of a discriminatory statute has no standing for that purpose, unless he belongs to the class which is prejudiced by the statute. And where the class which includes the party complaining is in no wise prejudiced by the general rule, or the particular objectionable feature of the statute does not happen to prejudice the plaintiff, he cannot be heard to complain of the statute on the ground that it is unconstitutional." Olson v. Ross, 39 ND 372, 167 NW 385.

See also State v. First State Bank, 52 ND 231, 202 NW 391; Anderson v. Byrne, 62 ND 218, 242 NW 687; State ex rel. Hughes v. Milhollan, 50 ND 184, 195 NW 292; Minot Special School Dist. v. Olsness, 53 ND 683, 208 NW 968, 45 ALR 1337.

In Asbury Hospital v. Cass County, 72 ND 359, 7 NW2d 438, on page 392 of the North Dakota Report we quoted from 16 CJS pp 161, 162 as follows:

"One may attack the constitutionality of a statute only when and so far as it is being or is about to be applied to his disadvantage; and to raise the question he must show that the alleged unconstitutional feature of the statute injures him and so operates as to deprive him of a constitutional right."

In my opinion a classification with respect to lands obtained by the State through foreclosure proceeding which gives a preference of repurchase to the former owner, his widow or lineal

descendants, is a reasonable classification and one for which the legislature may constitutionally provide. Preferences of this nature have become established legislative policy in this state. See § 15–0715, Rev Code ND 1943, and Ch 305 Sess Laws ND 1945. The statute in question may contain other discriminating classifications concerning which the plaintiff is in no position to complain because they do not affect him. The defendant Rudolf who seeks to assert a preference right to purchase is a lineal descendant of the first degree of the former owner and was in possession at the time of the passage of the act. As against the plaintiff who is a stranger to the title and unrelated to the former owner, the classification which gives the defendant a preference is valid. Under the authority above cited he is not entitled to challenge the constitutionality of the statute on the basis of other classifications which do not prejudice his rights.

The plaintiff further challenges the statute upon the ground that it is violative of § 185 of the North Dakota Constitution which prohibits the State from loaning or giving its credit or making donations except for the reasonable support of the poor. This challenge may be presented as a taxpayer under the authority cited in the majority opinion. For general authority to maintain a taxpayer's action, see note Ann Cas 1913C 884; 52 Am Jur Taxpayers' Actions, §§ 2 et seq. Thus is presented the question of whether the statute by directing the Bank of North Dakota to sell the property in question to preferred classes of persons at private sale for the appraised value thereof requires the Bank to thus make a donation of State property. I am unable to agree with the majority that such is the case. The legislature may provide by law for the disposal of property belonging to the State in any manner that does not conflict with constitutional provisions. State ex rel. Equity Farms v. Hubbard, 203 Minn 111, 280 NW 9; People v. Monterey Fish Products Co. 195 Cal 548, 234 P 398, 38 ALR 1186. There is no constitutional provision which requires the land in question to be sold at public auction. The legislature may authorize or direct the Bank of North Dakota to dispose of lands under its control by private sale. Before the land can be sold the statute under con-

sideration requires it to be appraised and it may not be sold for less than the appraised value. The appraisement presumptively fixes a fair value and in the absence of fraud on the part of the appraisers (and none is alleged in this action) the appraisement fixes what the land is worth. The mere fact that the legislature could have decided upon another method of sale, as a matter of policy, which might yield more money in some instances, does not stigmatize the private sale as a gift or donation. The statute is not violative of § 185 of the North Dakota Constitution.

The remaining question is whether the plaintiff as a taxpayer may challenge the statute upon the ground of discriminatory classification. I have above pointed out that as a private purchaser he is estopped from challenging the constitutionality of the act on the ground of discriminatory classification because he has elected to act under it and seek its benefits. As a taxpayer he cannot attack the statute upon grounds which his own conduct has barred him from raising in the private capacity of one who desires to purchase the land.

Furthermore, as the statute does not violate the constitutional prohibition against donations, the plaintiff as a taxpayer will suffer no injury. The state will receive the value of the property as determined by an appraisement made pursuant to legislative authority.

"It is a firmly settled principle of law that a court will not listen 'to an objection made to the constitutionality of an act by a party whose rights it does not affect, and who has therefore no interest in defeating it.' Cooley, Constitutional Limitations 7th ed 232.

"Cyc (8 Cyc 788) states the rule thus: 'All constitutional inhibition against the taking of private property without due process of law, and all constitutional guaranties of equal rights and privileges, are for the benefit of those persons only whose rights are affected, and cannot be taken advantage of by any other persons.'

" 'A person who is seeking to raise the question as to the validity of a discriminatory statute has no standing for that

purpose unless he belongs to the class which is prejudiced by the statute.' (6 RCL § 89.) And 'where the class which includes the party complaining is in no wise prejudiced the general rule is that it is immaterial whether a law discriminates against other classes, or denies to other persons equal protection of the laws.' (6 RCL § 88.) But 'a member of a particular class which may be discriminated against does not necessarily have the right to champion any grievance of that entire class in the absence of any actual interest which is prejudiced or impaired by the statute in question.' (6 RCL § 90.) This principle has repeatedly been announced by this court." State ex rel. Linde v. Taylor, 33 ND 76, 156 NW 561, LRA1918B 156, Ann Cas 1918A 583.

As a taxpayer the plaintiff may not challenge the constitutionality of the statute on the ground that it discriminates between prospective purchasers whose rights, if any, are wholly personal and private. I am, therefore, unable to concur in the determination that the statute in question is unconstitutional.