E. H. FULLER v. THE BOARD OF UNIVERSITY AND SCHOOL LANDS OF THE STATE OF NORTH DAKOTA, and Alex. McDonald, as Commissioner of University and School Lands of the State of North Dakota.

(129 N. W. 1029.)

School Lands — Sale — Power of Board of University and School Lands.

 1. Section 156 of the state Constitution, providing for the Board of University and School Lands, construed with statutory enactment carrying the same into effect, gives said board general and full powers in the sale of school lands, except as otherwise limited by constitutional and statutory enactment.

School Lands — Sale — Power of Board of University and School Lands.

 2. Such grant of power carries with it the duty by the board of using judgment and discretion in such matters, commensurate with the importance of its duties as the trustee of the school fund of the state.

Public Lands — Disapproval of Sale by Board — Right of Review.

 3. Under section 174 of the Revised Codes of 1905, providing for the approval and consummation of school sales by the board, the disapproval by the board of a sale of school lands, and refusal to cause contract of sale to be executed, of land struck off at a school sale to a bidder, cannot be reviewed or controlled by the courts, the board's conclusion being final.

Mandamus — Review of Discretionary Acts of Board.

 4. *Held*, further, that such decision of the board is a quasi-judicial determination, as distinguished from ministerial acts; and mandamus will not lie to review the same, or the evidence or information upon which such decision was based.

Certiorari — Grounds — Jurisdiction.

 5. Under the facts disclosed by the record in this case, certiorari will not lie to review such action of the board.

Opinion filed January 30, 1911.

Appeal from the District Court of Burleigh county; *Winchester, J.* Affirmed.

*Engerud, Holt, & Frame,* for appellant.

Ministerial and administrative duties, although involving exercise of judgment and discretion, may be coerced by mandamus. Merrill, Mandamus, § 44; 26 Cyc. Law & Proc. p. 161; Haynes, New Trials, § 323; State ex rel. Keane v. Murphy, 19 Nev. 89, 6 Pac. 840; State ex rel. Humboldt County v. Lander County, 22 Nev. 71, 35 Pac. 300; Stockton & V. P. R. Co. v. Stockton, 51 Cal. 328, 339; People v. Alameda County, 45 Cal. 395; Wood v. Strother, 76 Cal. 545, 9 Am. St. Rep. 249, 18 Pac. 766; Raisch v. Board of Education, 81 Cal. 542, 22 Pac. 890; Detroit v. Hosmer, 79 Mich. 384, 44 N. W. 622; State ex rel. Adamson v. Lafayette County Ct. 41 Mo. 226; Glencoe v. People, 78 Ill. 382.

Where a board or officer has to determine facts that impose a duty, the decision is not conclusive upon the court in mandamus, unless the statute expressly imposes the sole discretion on such officials. Wood v. Strother, 76 Cal. 545, 9 Am. St. Rep. 249, 18 Pac. 766, and cases cited.

If the duty to investigate for fraud or irregularity was judicial, it can be reviewed on mandamus for fraud. Wood v. Strother, 76 Cal. 545, 9 Am. St. Rep. 249, 18 Pac. 766; 2 Spelling, Inj. & Extr. Rem. p. 1135, § 1384; Merrill, Mandamus, § 38; Gunn v. Lauder, 10 N. D. 389, 87 N. W. 999; 26 Cyc. Law & Proc. p. 161.

*Andrew Miller, Alfred Zuger,* and *C. L. Young,* for respondent.

Mandamus will not control or review the discretion of a court, board, or officer in judicial or quasi-judicial acts. 26 Cyc. Law & Proc. p. 160; High, Extr. Legal Rem. §§ 42 & 43; United States ex rel. Tucker v. Seaman, 17 How. 225, 15 L. ed. 226; United States v. Commissioner (United States ex rel. McConnell v. Edmunds) 5 Wall. 563, 18 L. ed. 693.

Approval involves the exercise of discretion and judgment. Cosner v. Colusa County, 58 Cal. 274; State ex rel. State Pub. Co. v. Smith, 23 Mont. 44, 57 Pac. 449; Words & Phrases, p. 475; DePoyster v. Baker, 89 Tex. 155, 34 S. W. 106; Com. ex rel. Vandyke v. Henry, 49 Pa. 533; State ex rel. Marsh v. State Land Comrs. 7 Wyo. 478, 53 Pac. 292.

Mandamus will only lie for nonaction, to compel a tribunal to come to a decision. People ex rel. Harris v. Land Office Comrs. 149 N. Y. 26, 43 N. E. 418, 26 Cyc. Law & Proc. p. 158; Merrill, Mandamus, § 42; Ex parte Burtis, 103 U. S. 238, 26 L. ed. 392; State ex rel. Marsh v. State Land Comrs. 7 Wyo. 478, 53 Pac. 292.

Mandamus will not lie to correct or review the decision of an inferior tribunal or officer. 26 Cyc. Law & Proc. pp. 160, 177; State ex rel. Milwaukee v. Ludwig, 106 Wis. 226, 82 N. W. 158; State ex rel. Fourth Nat. Bank v. Johnson, 103 Wis. 591, 51 L.R.A. 33, 79 N. W. 108; 2 Spelling, Inj. & Extr. Rem. 2d ed. § 1393; State ex rel. Marsh v. State Land Comrs. 7 Wyo. 479, 53 Pac. 292; People ex rel. Harris v. Land Office Comrs. 149 N. Y. 26, 43 N. E. 418; State v. Winchester, 18 N. D. 534, 122 N. W. 1111; 6 Cyc. Law & Proc. pp. 750–752.

Goss, J. Plaintiff brings mandamus to compel execution and delivery of a contract for the sale of school lands which defendant commissioner struck off to plaintiff at a sale of school lands in Steele county, at which plaintiff was the highest and only bidder for certain lands. All preliminaries prior to sale were complied with, and, on the sale, payment was made by the purchaser to the county treasurer, pending approval of the sale by the Board of University and School Lands. After an investigation, and on information before it, said board disapproved the sale, finding fraud and collusion between the plaintiff and other bidders at the sale, and, on plaintiff's petition for review by the board, the sale was again disapproved for inadequacy of price paid for the land.

Thereafter mandamus proceedings were instituted in district court to compel the issuance and delivery of a contract of sale by the board and commissioner to the plaintiff for the land. After trial the court dismissed the proceeding, holding the decision of the board final and conclusive, and not subject to review by mandamus; from which decision plaintiff appeals, alleging specifications of error sufficient to bring all questions embodied in the record before this court for determination.

The decision of this action involves:

(1) The powers and duties of the board under the facts in this case;

(2) Whether such duties are judicial, quasi-judicial, or merely ministerial;

(3) Whether the decision of the board is reviewable by mandamus or certiorari.

The Board of University and School Lands is provided for by the State Constitution, § 156 thereof providing, "Said board shall have control of the appraisement, sale, rental, and disposal of all school and university lands," subject, however, to further constitutional limitations as to manner of sale, minimum price, payments, and investment of income derived from the sale of these lands. Under such authority the legislature has, in Articles 1, 2 and 3, chapter 4, of the Political Code, more definitely defined the above powers and duties, their exercise and limitations; and providing for a State land commissioner as the ministerial agent of the Board of University and School Lands, specifically defining his duties; and providing further that, subject to the provisions of constitutional and statutory restrictions, "such board shall have the full control of the selecting, appraisement, rental, sale, disposal, and management of all school and public lands of the state," and "the investment of the permanent funds derived from the sale thereof or from any other source, and shall have power to appoint a competent person to act as the general agent of the board in the performance of all its duties pertaining to the selection, sale, leasing, or contracting in any manner allowed by law, and the general control and management of all matters relating to the care and disposition of the public lands of the state, all of whose official acts shall be subject to the approval and supervision of the board. The title of such agent shall be 'Commissioner of University and School Lands.'" Sec. 153, Code 1905. The duties of such Commissioner of University and School Lands are as defined in the foregoing, and § 166, Code 1905, as further supplemented by statutory provisions defining or limiting the exercise of such duties imposed, among which is § 174, Code 1905, reading in part: "The county auditor shall act as clerk of all land sales and leases, made in his county, and it shall be his duty, within five days after such sale or lease shall have been concluded, to certify to the Board of University and School Lands a list of lands sold or leased, as provided in this article, with the price thereof, and the name of the purchaser or lessee of such tract, the amount for which the lands are sold or leased, the amount of money paid by

said purchaser, and the amount of principal remaining unpaid, and the Board of University and School Lands shall approve and confirm the sale or lease of every such tract, as upon examination of such certified lists and such further information and investigation as shall be deemed necessary, shall be found to have been sold or leased in accordance with the law and without fraud or collusion." The statute further provides that "immediately upon the approval of the sales by the Board of University and School Lands the secretary of such board shall prepare and certify a list of said approved sales to the commissioner, who shall, without delay, execute duplicate contracts in the form prescribed by the board, and forward the same to the county auditor of the county where the land was sold" [§ 175], who, upon execution of said contracts by the purchaser at the sale, and his payment of moneys and fees required, shall deliver a duplicate contract to the purchaser. This consummates the sale between the state and the purchaser.

As to the powers of said board, it is significant that the Constitution (§ 156 above quoted) gives said board general powers in these words: "Said board shall have control of the appraisement, sale, rental, and disposal of all school and university lands." This has been construed and made even more definite by § 153, Code 1905, providing: "Such board shall have the full control of the selecting, appraisement, rental, sale, disposal and management of all school and public lands of the state," the legislature having, in its construction of the constitutional provision, used the words, "full control," "selecting," and "management," with the other terms used in the constitutional enactment. Then, again, the legislature, construing such constitutional authority, has given to the commissioner the "general charge and supervision of all lands belonging to the state;" and in this connection the office of commissioner was created to carry into effect the will of the board, and by statute (§ 153) designated "the general agent of the board in the performance of all its duties pertaining to the selection, sale, leasing, or contracting in any manner allowed by law, and the general control and management of all matters relating to the care and disposition of the public lands of the state," and to perform ministerial duties for the board.

The board, then, as construed by legislative enactment on the matter of its powers, has full control of the selecting, appraisement, rental, sale, disposal, and management of school lands of the state. It acts as a.

body for and on behalf of the state. With this grant of general power is expressly and impliedly conferred the duty of using judgment and discretion in such matters, commensurate with the importance of the trust reposed in it. This is the plain intent of the Constitution and statute creating the board and defining its duties. It is, then, a board vested with discretion in the performance of its duties generally, except where it is by law specially limited therein. Sec. 174, Code 1905, provides this board, on the county auditor's return made of sales of school lands, "shall approve and confirm the sale or lease of every such tract as, upon examination of such certified lists and such further information and investigation as shall be deemed necessary, shall be found to have been sold or leased in accordance with the law and without fraud or collusion." Could any language be used to give this board more general authority to act according to its judgment and discretion? It is not limited to the county auditor's return, or to any particular investigation in kind, amount, or sufficiency. The board is specifically given the right to make such further investigation as it shall deem necessary, touching the sale. It may receive and act upon such proofs as it deems competent and as shall satisfy its reason and judgment in the matter. The board must determine to its own satisfaction that the sale was in accordance with law, and without fraud or collusion, before it can approve such sale. An investigation must be made to determine this, but the amount of investigation and the quality and sources of information are left for its determination. Every member of the board, like every public officer, is presumed to know the law, and enjoined to follow it, as the sale must be "in accordance with law." To do their duty they must remember the board is a trustee for the state in the matter on which it acts; that the Constitution vests it with power over the school lands, and thereby supervision over the school fund, which the Constitution, by express terms, says shall remain "inviolably appropriated and applied to the specific objects of the original grants," —the schools of this state. Under every rule of public policy the proper execution of its trust demands that every sale of school land by this board shall be, as is aptly declared in State ex rel. McKinnon v. Scott, 17 Neb. 686, 24 N. W. 337, "for the highest price possible to be obtained, to increase and protect by all honorable means the funds for the support of the educational institutions."

A sale otherwise in accordance with law, but made through fraud or collusion, is void under the terms of the statute quoted, and is specifically declared so by § 176, Code 1905, reading: "Any sale made by mistake, or not in accordance with law, or obtained by fraud, shall be void, and the contract of purchase issued thereon shall be of no effect." Under the statute the board must pass judgment upon, among other questions, that of fraud or collusion in the sale. As this is a matter necessarily difficult to determine, and of which the proof, from the very nature of things, often cannot be made to a degree that court procedure usually requires, the question of the sufficiency of the proof, competency of evidence, and the manner of determining the same, is not limited, under the statute, by any specific rule other than that all these matters are left to the discretion and determination of the board, the statute giving it the full authority in this matter granted elsewhere in the statute in general terms, as heretofore set forth. It has full control of the disposal of public lands under the statute, and § 174 of the Code of 1905 does not in anywise abridge or limit such control or discretion on so important a matter as the very act of final determination as to whether to ratify the sale and thereby pass the matter from its control. In other words, it would be an unreasonable construction of the statute to say that the board has full authority as to the disposal of public lands, except as to the most important step in the proceedings,—that of determining compliance or noncompliance with the law, adequacy or inadequacy of price, fraud or collusion or absence thereof in the sale,—all of them matters regarding which it was the very spirit and object of the Constitution and the law that it should be passed upon by a board whose judgment should be as sound as it should be conclusive. Indeed, the personnel of the board but emphasizes the judgment and discretion presumed to be exercised in the alienating for price of state property, the Constitution providing for the united judgment thereon of a board composed of the governor, superintendent of public instruction, attorney general, secretary of state, and state auditor.

Upon an investigation of the above matters, this board approves or disapproves the sale, and on the approval depends the sale. If this board should have the full control given it by statute, certainly its approval should not be controlled by courts. It is the approval of the board, not of courts, upon which the question of alienation of state's

property depends.   The very act of approval, unless limited by the context of the statute providing therefor, imports the act of passing judgment, the use of discretion, and a determination as a deduction therefrom.   1 Words & Phrases, p. 474; State ex rel. State Pub. Co. v. Smith, 23 Mont. 44–51, 57 Pac. 449; Cosner v. Colusa County, 58 Cal. 274.

If the Constitution intended the decision of the board to be final it cannot be disturbed by mandamus.   Wood v. Strother, 76 Cal. 545– 554, 9 Am. St. Rep. 249, 18 Pac. 766.

Viewed in the light of the reasons for these constitutional and statutory enactments,—the importance of the duties conferred upon the board so created, the necessity for the exercise of a high degree of judgment and discretion by a tribunal competent to do so, and charged with administering as a trustee of the millions in this greatest of all state funds, our school fund,—would it not be most absurd to do otherwise than to give full force to the mandate of the Constitution and statute granting full power to this board in the exercise of discretion and judgment in this the most important part of its duties, approval of sales of state property?   We must conclude such duty is wholly discretionary, and its decision as a body is a quasi-judicial determination.

The board has acted, and by resolution disapproved the sale because of fraud and collusion between the buyers, and inadequacy of the price bid.   Certain of the evidence upon which its conclusion is based is before the court, and consists of an affidavit, letters, information, and circumstances regarding sale and purchase price of this and other tracts. Possibly the board had further information, the extent of its investigation is not disclosed; it suffices that it had evidence and information, acting thereon in the exercise of discretion, disapproved the sale; presumably the board did its duty.   This court will not weigh in this mandamus case the evidence that was before the board, but, instead, recognizes that this board was charged by law with a duty, that of approving or disapproving this contract of sale, and that it has performed its duty, inasmuch as it has acted in the matter.

Mandamus has never been regarded as the proper remedy to control the judgment and discretion of an officer in the decision of a matter as to which the law gives him power and imposes upon him the duty to decide for himself, where the duty is such as requires the examination

of evidence and the decision of questions of law and fact. High, Extr. Legal Rem. §§ 42–48; Merrill, Mandamus, § 46; Spelling, Legal Rem. § 1384; 19 Am. & Eng. Enc. Law, p. 732; 26 Cyc. Law & Proc. p. 158; 8 Enc. U. S. Supp. Ct. Rep. 31.

The above authorities cite cases from every jurisdiction, declaring and applying with little variance this now elementary principle.

Plaintiff claims the acts of the board in approving sales are but ministerial and administrative duties involving limited exercise of judgment and discretion in determining the existence of certain facts, after determining which the approval is a ministerial duty, and that an erroneous decision as to such preliminary questions of fact may be reviewed by mandamus. For reasons hereinbefore stated, this contention is contrary to our construction of the statute, and contrary to facts as to the real duties of the board.

That this case does not come within this rule has practically been adjudicated by our court in State ex rel. Wiles v. Albright, 11 N. D. 22, 88 N. W. 729, in which the same counsel urged the same construction in an action in mandamus against a county auditor, in a mandamus to compel issuance and delivery of a salary warrant to a county superintendent of schools, the only preliminary matters of fact for the auditor's determination being the number of schools in the county, the same being the basis for the salary paid the superintendent, and whether on such basis the superintendent was already paid by overpayments previously made, and whether it was the plain duty of the auditor to determine these questions as preliminary questions to a purely ministerial duty of issuing and delivering the salary warrant. Certainly the determination of these matters of general knowledge would be much more simple and easy and embody less discretion and judgment than approval of the sale of school lands from evidence on independent investigation touching fraud, collusion, adequacy of price, and regularity of sale proceedings, as in the case on trial. But in the case cited the writ was denied on the grounds that the act of passing on the county's liability to the county official by the auditor under those circumstances, in the issuance of the salary warrant, was not a purely ministerial duty, and that "the auditor had a discretion to exercise as to his official actions, and mandamus will not lie to cause him to act when he is vested with such discretion." See also State ex rel. Marsh v. State Land Comrs. 7

Wyo. 478, 53 Pac. 292, wherein, at page 490, the court states: "The exercise of the power conferred upon the board to lease the lands of the state in the manner and to parties which shall inure to the greatest benefit and secure the largest revenue to the state requires judgment and discretion. No inflexible rule is laid down for the guidance of the board in those matters. The judgment and discretion to be exercised is judicial in character, and in an application for the writ of mandamus it is not proper for the court to interpose its opinion and judgment in the place of that of the board, even if the conclusion which the latter has reached upon the facts should appear to have been erroneous."

Counsel for plaintiff argues that the writ must lie to review the discretion of the board, and that the discretion and decision of the board is not conclusive, otherwise the board could, by fraud and collusion, preclude the state as against a purchaser of school lands. In other words, the rule against the review of the discretion of the board by mandamus should apply to the state as well as the purchaser, and, if so, the state, being unable to review the acts of the board by mandamus, might be injured by the fraud or collusion of the board. While the state cannot try the matter of fraud by mandamus to review the discretion of the board, any more than can the plaintiff in this action disprove fraud of the bidder against the contrary conclusion of the board in the matter, yet the state, in case of fraud or collusion by the board in the sale of school lands, may amply protect its rights by an action in equity based thereon, to set aside any fraudulent or collusive contract or conveyance of state property by the board to private individuals. But the state cannot do this in an action in mandamus, as to which the decision of the board is as conclusive against the state as against the purchaser.

Counsel for the state urge that plaintiff has mistaken his remedy, and should have used certiorari instead of mandamus. While this is but indirectly before us, yet in order to fully define plaintiff's rights under the record in this case, we are satisfied the acts of the board are not reviewable by certiorari on the application of the plaintiff. The tribunal whose acts would be so reviewed by certiorari acted entirely within its jurisdiction, and, so far as the facts in this case are concerned on the record, there is no cause for review, and certiorari will not lie.

The judgment of the District Court dismissing this action is affirmed. All concur.