**STATE v. OSTER.**

No. 7345.

Supreme Court of North Dakota.

Nov. 18, 1953.

E. T. Christianson, Atty. Gen., C. E. Brace, Asst. Atty. Gen., Bismarck, for appellant.

Floyd B. Sperry, Golden Valley (Hyland & Foster, Bismarck, on brief), for respondent.

BURKE, Judge.

This appeal is from an order sustaining a demurrer to plaintiff's complaint. In its complaint the plaintiff alleged, that in 1916 it sold certain original grant lands, located in Mercer County, according to the terms of a contract for deed issued to C. J. Fuerst; that by an approved assignment, this contract became the property of the defendant, Oster, who, upon full compliance with all the conditions of the contract, received from the plaintiff a patent conveying fee title to the said land on or about July 2, 1928; that the contract for deed provided, "That if the described land shall be found to be 'coal land' and that the same has been sold in violation of Section 155 of the Constitution of the State of North Dakota, then, and in that case,

the said land shall immediately revert to the State, and this contract shall at once become null and void": that the patent to said land issued to the defendant "reserved and excepted from the operation of this grant all rights and privileges vested in the State of North Dakota under the provisions of the constitution and the laws of said state;" that some time in the year 1950 the plaintiff discovered that the conveyed lands were "coal lands" and that the sale thereof was in violation of Section 155 of the Constitution of the State of North Dakota. Upon these allegations plaintiff demanded judgment cancelling the patent issued to the defendant.

The question is whether the complaint states a cause of action and this, in turn, depends upon whether the state may, after its qualified officers have found that land was legally subject to sale and have issued a patent therefor, challenge the sale upon the ground that the nature of the land was such that its sale was prohibited by the Constitution.

■ The sale of "coal lands" is prohibited both by the Constitution and by statute. Constitution of N. D. Sec. 155; Sec. 15–0506, NDRC 1943. The power to sell original grant lands is vested in the Board of University and School Lands by Sec. 156 of the Constitution in these words: "Said board shall have control of the appraisement, sale, rental and disposal of all school and university lands". In furtherance of this grant of power the legislature has provided: "The board shall have * * * full control of the selection, appraisement, rental, sale, disposal, and management of * * * lands donated or granted by or received from the United States * * *." Sec. 15–0102, NDRC 1943, Sec. 153, R.C.1905.

The statutes also provide in detail for the selection of lands for sale, the manner of the sale thereof, the approval of sales, the conditions upon which sales are void, and the issuance of patents conveying sold lands to the purchasers thereof.

Sec. 15–0507, NDRC 1943, enacted as c. 176, Laws of N. D. 1903, provides:

"The board of university and school lands, with the assistance of the state geologist, shall ascertain and determine the quantity and description of all lands under its control on which coal exists and shall compile and keep a statement and schedule of all such lands."

■ Before any original grant lands may be sold they must be selected and certified by the Board of University and School Lands. Sec. 15–0606, NDRC 1943, Sec. 168, R.C.1905. Such lands must be sold at auction to the highest bidder upon a long time contract for deed. Sec. 15–0610, NDRC 1943, Sec. 171, R.C.1905. No prepayments upon such contracts for deed may be made until after five years from the date of the sale. Sec. 15–0617, NDRC 1943, Sec. 189, R.C.1905. Any sale made by mistake or not in accordance with law, or obtained by fraud, may be set aside and *the contract of purchase,* declared to be of no effect. Sec. 15–0806, NDRC 1943, Sec. 176, R.C.1905. All sales are required to be approved by the Board of University and School Lands and no sale shall be approved "unless, from an examination of the certified lists and other information received and investigation made, it shall appear to the board that the sale was made in accordance with the provisions of this title and without fraud or collusion." Sec. 15–0805, NDRC 1943, Sec. 174, R.C.1905. After full compliance with all of the terms of his contract, the purchaser shall be issued a patent, "signed by the governor and attested by the secretary of state with the great seal of the state, and shall be countersigned by the commissioner of university and school lands with the seal of the board." Sec. 15–0816, NDRC 1943, Sec. 189, R.C.1905.

■ A consideration of the foregoing constitutional and statutory provisions, makes it clear that, while the sales of state lands are surrounded with multiple safeguards to insure against illegal sales, inadequate price and fraud and collusion and to procure an avoidance of contracts of sale for such reasons prior to the issuance of a patent; it was nevertheless the con-

stitutional and legislative intent that after a good faith determination by the board that the sales were not subject to such infirmities, and the issuance of patents to the lands sold, that all questions of legality should be concluded and the sales should be final and irrevocable.

█ Prior to the issuance of patents the board is required three times to pass upon the question of whether lands are legally subject to sale, first, when it selects the lands to be offered for sale; second, when it approves the contracts of sale; and third, when it directs the issuance of patents. The board is given adequate opportunity and means to determine whether lands offered for sale and sold are "coal lands". The state geologist is directed by statute to cooperate with the board in preparing a list of such lands. The board has a five year period between the time of the sale and the time when the purchaser may elect to make prepayments on his contract, in which to make investigations as to individual sales before giving its final approval thereto. The statute, relating to the avoidance of sales, provides that under certain conditions the *contract of sale* shall be declared void. There is no statutory provision for avoiding a patent issued after an approval and confirmation of the contract of sale.

The effect of an approval or disapproval of a sale of state lands by the Board of University and School Lands has been considered by this court in Fuller v. Board of University and School Lands, 21 N.D. 212, 129 N.W. 1029. In this case we said, referring to the board, 21 N.D. at page 218, 129 N.W. at page 1032:

"It has full control of the disposal of public lands under the statute and Section 174 of the Revised Codes of 1905 (Sec. 15-0805, NDRC supra) does not in anywise abridge or limit such control or discretion on so important a matter as the very act of final determination as to whether to ratify the sale and thereby pass the matter from its control. In other words, it would be an unreasonable construction of the statute to say that the board has full authority, as to the disposal of public lands except as to the most important step in the proceedings, that of determining compliance or non-compliance with the law, adequacy or inadequacy of price, fraud or collusion or the absence thereof in the sale, all of them matters regarding which it was the very spirit and object of the Constitution and the law that it should be passed upon by a board whose judgment should be as sound as it should be conclusive."

The question before us has arisen in other jurisdictions, where statutes prohibiting the sale of "mineral lands" exist. In almost identical form it has been before the courts of the United States and the highest courts of several of the states. In Burke v. Southern Pac. R. Co., 234 U.S. 669, 687, 34 S.Ct. 907, 914, 58 L.Ed. 1527, 1547, a case concerning the alienation of mineral lands of the United States, the Supreme Court said:

"But it is said that the Secretary of the Interior has no authority to patent mineral lands, and that a patent for lands in fact mineral would afford no protection to the railroad company in the event of the future discovery of precious metals therein. This is a mistake. After the Secretary of the Interior has decided that any particular lands are not mineral, and has issued a patent therefor, the title is not liable to be defeated by the subsequent discovery of minerals."

In Cowell v. Lammers, C.C., 21 F. 200, 206, 10 Sawy. 246, it was said:

"There must be some point in time when the character of the land must be finally determined, and, for the interest of all concerned, there can be no better point to determine this question than at the time of issuing the patent."

See also Greene v. Robison, 109 Tex. 367, 210 S.W. 498; Shaw v. Kellogg, 170 U.S. 312, 18 S.Ct. 632, 42 L.Ed. 1050.

In opposition to the principles above set forth, the state urges the reservation contained in the patent itself and the provisions of Sec. 32–1201 NDRC 1943. We shall consider each in turn.

The reservation relied upon reserves "from the operation of this grant all rights and privileges vested in the State of North Dakota under the provisions of the Constitution and the laws of said state. Similar reservations have been considered in some of the cases above cited. In Cowell v. Lammers, C.C., 21 F. 200, 208, 10 Sawy. 246, it was said:

"A patent upon its face should either grant or not grant. It must be seen from a construction of the language of the grant (patent) itself whether anything is granted or not, and, if anything be granted, what it is. There is no authority to issue a patent which, in effect, only says if the lands herein described hereafter turn out to be agricultural lands, then I grant them, but if they turn out to be mineral lands, then I do not grant them. Such a patent would be so uncertain that it would be impossible to determine, from the face of the patent, whether anything is granted or not."

And in Burke v. Southern Pac. R. Co., 234 U.S. 669, 34 S.Ct. 907, 921, 58 L.Ed. 1527, 1553, it was said:

"What is the significance of, and what effect can be given to, the clause inserted in the certificate of approval of the plat that it was subject to the conditions and provisions of the act of Congress? We are of opinion that the insertion of any such stipulation and limitation was beyond the power of the Land Department. Its duty was to decide, and not to decline to decide; to execute, and not to refuse to execute, the will of Congress."

The language, last above quoted, applies with special force to the instant case for the statutes of this state clearly and unequivocally make it the duty of the Board of University and School Lands to make an investigation and determine by the official act of the board whether lands sold are legally subject to sale before the issuance of a patent thereto.

The statute relied on by the state, Sec. 32–1201, NDRC 1943 provides:

"The state may bring an action to vacate or annul letters patent for lands granted by this state in any of the following cases:

"1. * * *

"2. When they are issued in ignorance of a material fact or through mistake.

"3. * * *."

We are of the opinion that the above statute has no application to a case where a sale of land has been strictly in accord with statute, with respect to selection for sale, sale, approval of the contract for sale and the issuance of a patent. It is the existence of these facts which are material to the validity of the sale. The statute does not grant a right to question the good faith decision of the board that the lands sold were legally subject to sale. To so hold would be to reverse the prior holding of this court that the board's decision approving or disapproving a sale is conclusive. Fuller v. Board of University and School Lands, supra. Such a decision would also be contrary to the well established rule of statutory construction existing in other jurisdictions in the United States.

The decision of the district court sustaining the demurrer to plaintiff's complaint is accordingly affirmed.

MORRIS, C. J., and SATHRE, CHRISTIANSON and GRIMSON, JJ., concur.