Lester C. CONVIS and Ruth M. Convis,
Plaintiffs and Respondents,

v.

STATE of North Dakota, John E. Davis, as Governor; Ben Meier, as Secretary of State; Curtis Olson, as State Auditor; Leslie R. Burgum, as Attorney General; M. F. Peterson, as Superintendent of Public Instruction of the State of North Dakota, as members of the Board of University and School Lands, and their successors in office, and Anton J. Schmidt, as State Land Commissioner, and his successor in office, Defendants and Appellants.

No. 7853.

Supreme Court of North Dakota.

May 26, 1960.

Rehearing Denied July 15, 1960.

Jansonius, Fleck, Smith, Mather & Strutz, Bismarck, and Palda, Palda & Peterson, Minot, for plaintiffs and respondents.

Leslie R. Burgum, Atty. Gen., John E. Adams, Asst. Atty. Gen., for defendants and appellants.

HARRY E. RITTGERS, District Judge.

On December 5, 1953, the State of N. D., through the Board of University and School Lands, as seller, entered into a contract with Lester C. Convis and Ruth M. Convis, his wife, as purchasers, for the sale of the SW¼, Sec. 36, Twp. 158 N. of Rge. 83 W. of the 5th P.M., in Renville County, N. D.

It is admitted that all preliminary proceedings required by law prior to the making of such contract were properly complied with. The stated consideration for such contract was $4,100, of which $820 was paid in cash, the remainder with interest to be paid in specified installments. The contract provided upon receipt of payment of all sums due under the contract the State would issue patent conveying title to the purchasers subject to reservations contained in the contract as hereinafter discussed. Plaintiffs entered into possession of said land in the spring of the year 1954 and farmed the land. In 1955 Peter Kiewitt Sons' Co., one of the contractors for the construction of a large military air base located near Minot by the U. S. Government, after testing the land in question found that it contained large quantities of gravel under the surface till, and entered into a contract with plaintiffs for the purchase and removal of such gravel for use in construction of the said airport. Under such agreement the contractor proceeded to remove gravel from said land, the value of which as fixed by its purchase agreement with plaintiffs amounted to approximately $100,000. Approximately $20,000 of this amount was paid to the plaintiffs, and the balance has

been deposited in banks awaiting determination of its ownership by the courts. By such operations gravel to a depth running between 3 ft. and 15 ft., over an area of approximately 100 acres of the land in question, was removed, which land was thereby destroyed for agricultural purposes. Upon receiving part payment for the gravel so removed, plaintiffs tendered to defendants the full unpaid balance due under said contract, which tender defendants refused to accept. Plaintiffs assert ownership of said gravel and the proceeds of the sale thereof under their contract with defendants, on the ground that the attempted reservation of title to gravel contained in the contract was not within the power and authority of the Board, and defendants assert ownership thereof in the State under the reservations contained in the contract.

Plaintiffs in their complaint ask for relief as follows: (1) That defendants be required to issue patent conveying title to plaintiffs containing only the reservations as provided by law; and (2) That title be quieted in plaintiffs and that defendants be enjoined and debarred from further asserting any right, title or interest in the land in excess of those reserved as provided by law.

For their defenses to this action the defendants in their answer allege:

(1) That the defendants herein are the owners of the fee title to the premises described in the complaint herein and that the contract conveys no right, title or interest in and to gravel that has been or may be found on or underlying the premises herein concerned; and

(2) That Sec. 38–0901, NDRC reserves and excepts to the State 50% of all gravel or sand that may be found on said premises.

Defendants pray for judgment decreeing defendants to be the owners of and entitled to reserve all gravel in said land; and that title therein be quieted in defendants except as provided by the law governing the sale of real property.

The reservations so relied upon by the State, as set forth in the land contract, are as follows:

"The grantor, however, reserves to itself all coal, oil, natural gas and other minerals which may be found on or underlying such land as provided by resolution of the Board of University and School Lands of date January 31st, 1952, together with a right of ingress and egress at all times for the purpose of mining, drilling, exploring, operating and developing said land for coal, oil, gas, and other minerals, and storing, handling, transporting, and marketing the same therefrom with the right to remove from said land all of grantor's property and improvements placed on said land for the purposes aforesaid. * * *" Upon full compliance with the terms of said contract, "the said vendor shall cause to be issued and delivered to the said vendee, his heirs and assigns, or other legal representatives, a Patent for the said premises; said patent, however, shall contain the reservation required by Sec. 38–0901 of the 1943 Code." That section provides:

Sec. 38–0901, NDRC. "Interest in Oil, Gas, and Mineral Rights To Be Reserved on Transfer of State Lands. In every transfer of land, whether by deed, contract, lease, or otherwise, by the state of North Dakota, or by any department thereof, fifty percent of all oil, natural gas, or minerals which may be found on or underlying such land shall be reserved to the state of North Dakota. Any deed, contract, lease, or other transfer of any such land made after February 20, 1941, which does not contain such reservation shall be construed as if such reservation were contained therein. The provisions of this section shall apply to all lands owned by this state or by any depart-

ment thereof regardless of how title thereto was acquired."

There was received in evidence a copy of the resolution of the Board of University and School Lands referred to in the first of the above quoted reservations contained in the contract, the pertinent parts of which are as follows:

"Now, Therefore, Be It Hereby Resolved by the Board of University and School Lands that, if and when any of said grant lands only are hereafter sold, all of the minerals enumerated in said section 15–0509 NDRC 1943, as well as all substances commonly held to be minerals, if any there may be, shall be reserved from such sale, and all conveyances shall provide that surface rights only are conveyed."

That this provision of the resolution of the Board may be better understood, we quote the following pertinent code sections.

Sec. 15–0509, NDRC. "Leases for Oil, Gas, and Other Products. The board of university and school lands may lease any lands under its control believed to contain oil, gas, coal, cement materials, sodium sulfate, sand and gravel, road material, building stone, chemical substances, metallic ores, or colloidal or other clays, and may make and establish rules and regulations for development and drilling operations."

Sec. 15–0516, NDRC. "Reports; State Geologist; State Chemist. The state geologist or the state food commissioner and chemist, on the request of the board of university and school lands, shall visit any land leased under the provisions of section 15–0509 and shall make a report thereon to the board. The state geologist or the state food commissioner and chemist shall not receive a fee for making the examination and report but shall be paid his necessary expenses incurred in connection therewith."

Section 15–0509, NDRC 1943, pertains only to the leasing of the land by the Board, and when the Board believes the land contains the minerals mentioned in said section, then Sec. 15–0516, NDRC 1943, directs that "the state geologist or the state food commissioner and chemist * * * make a report thereon to the board." There is no evidence in the record of the existence of any belief on the part of the Board on the date of the execution of the contract in question, of the existence of gravel on the land in question, and the evidence at the trial is to the effect that no request for the report mentioned in the statute was ever made by the Board. This amounts to a decision by the Board that it was not feasible to lease the land in question for the production of the products mentioned in Sec. 15–0509, NDRC 1943, above quoted and referred to in the reservation contained in the contract above quoted. The reference in the contract to Sec. 15–0509, NDRC 1943, appears to have been made only for the purpose of identifying the products of the soil therein named as the ones attempted to be reserved under the resolution of the Board, since the statutes cited relate only to leasing and not to the sale of lands.

 Pursuant to the provisions of the Enabling Act and our State Constitution hereinafter mentioned, our state legislature has adopted Sec. 38–0901, NDRC, which very definitely defines and limits the power of the Board in selling state lands. This statute contains a double restriction. First, it provides: "In every transfer * * * fifty percent of all oil, * * * gas, or minerals * * * shall be reserved to the state of North Dakota." It further provides that, "any deed * * * made after February 20, 1941, which does not contain such reservation shall be construed as if such reservation were contained therein." This means that the interest in the land which the State may reserve in any transfer, is limited to one-half of the "gas, oil, and other minerals." Where land is sold by the State, no further reservation of any

title or interest in the land may be made. In this case the contract purported to reserve title to the gravel. The State had no power to reserve any part of the gravel.

Subsequent to the commencement of this action this Court has held in construing Sec. 38-0901, NDRC 1943, that the term "all oil, natural gas, or minerals" does not include gravel. Salzseider, et al. v. Brunsdale, et al., N.D., 94 N.W.2d 502.

■■■ Sec. 10 of the Act of Congress known as "The Enabling Act", as later amended, grants to this State certain lands which included the land involved here, for the support of the common schools. Sec. 11 of that Act states: "Provided, however, that none of such lands, nor any estate or interest therein, shall ever be disposed of except in pursuance of general laws providing for such disposition. * * *" Sec. 155 of our State Constitution provides that "the legislative assembly shall provide for the sale of all school lands subject to the provisions of this article. The coal lands of the state shall never be sold, but the legislative assembly may by general laws provide for leasing the same." Sec. 156 of the Constitution says: "Subject to the provisions of this Article and any law that may be passed by the legislative assembly, said board shall have control of the appraisement, sale, rental and disposal of all school and university lands." The statutes adopted by our State Legislature for the purpose of disposing of the lands granted in the Enabling Act to this State for the benefit of the common schools, express the public policy of this State. The only limitations upon legislative power in the establishment of public policy are the restrictions contained in the State and Federal Constitutions. Chaffee v. Farmers Co-op, 39 N.D. 585, 168 N.W. 616, 618. The Legislature having acted, and the meaning of the statutes being clear and not questioned in this case, there is no basis for executive construction of the powers granted the Board since executive construction is restricted to cases in which the meaning of the statute is really doubtful. State v. Stockwell, 23 N.D. 70, 134 N.W. 767, 778. "When the legislature acts with respect to the powers of the board, it acts in a restrictive capacity and not as a conferrer of authority." State ex rel. Rausch v. Amerada, 78 N.D. 247, 49 N.W.2d 14, 23. The contract must be construed to reserve no more and no less than the statute requires.

■■■ The reservations in the contract in question as quoted above included "coal." The sale of "coal lands" is prohibited both by Sec. 155 of the State Constitution and by Secs. 15-0506 and 15-0620, NDRC 1943. No coal has been "discovered" in the land in question. The purchaser is now entitled to receive a patent to the land and we hold under the rule announced by this court in State v. Oster, N.D., 61 N.W.2d 276, that under the facts the defendant is estopped at this time from asserting a right to such reservation.

The judgment of the trial court provided:

1. That patent be issued to plaintiffs containing only the reservation provided for by Sec. 38-0901, NDRC 1943.

2. That the defendants be forever debarred and enjoined from further asserting any right, title or interest in the gravel.

The judgment of the trial court is affirmed.

SATHRE, C. J., and MORRIS, BURKE, and TEIGEN, JJ., concur.

STRUTZ, J., deeming himself disqualified did not sit; HARRY E. RITTGERS, District Judge, sitting in his stead.