John M. HAAG and Beata Haag, Plaintiffs and Appellees,

v.

STATE of North Dakota, acting Through the BOARD OF UNIVERSITY AND SCHOOL LANDS, Defendant and Appellant.

Civ. No. 8955.

Supreme Court of North Dakota.

June 4, 1974.

Raymond M. Hagen, Beulah, and Orville A. Schulz, Center, for plaintiffs and appellees.

Thomas O. Smith, Special Asst. Atty. Gen., Bismarck, for defendant and appellant State of North Dakota.

VOGEL, Judge.

This appeal is from a judgment in favor of the plaintiffs in an action to quiet title brought by the purchasers of the Northeast Quarter (NE¼) and the Northwest Quarter (NW¼) of Section 36, Township 142, Range 84, in Oliver County, purchased from the defendant State of North Dakota. The plaintiffs Haag claim to own the fee title to the property, free of any claims of the State or its lessee to coal underlying the land, while the State claims that its patents to the plaintiffs are void because the land in question was "coal land" which the State was forbidden to sell by its Constitution or, in the alternative, that the State holds 50 per cent of the coal underlying the land. A second defendant, claiming under the State by a lease to mine coal, defaulted.

The lands in question were originally granted to North Dakota by the United States under Section 10 of The Enabling Act, Chapter 180, 25 U.S. Statutes at Large 676, approved February 22, 1889 (set forth in Volume 13, N.D.C.C.). The lands were granted to the State for the support of the public schools. Upon Statehood, such lands were held subject to Article IX of the Constitution of North Dakota, and subject to sale only as permitted by Section 155 of the State Constitution.

Prior to amendment in 1960, Section 155 read as follows:

"After one year from the assembling of the first legislative assembly the lands granted to the state from the United States for the support of the common schools, may be sold upon the following

conditions and no other: No more than one-fourth of all such lands shall be sold within the first five years after the same become salable by virtue of this section. No more than one-half of the remainder within ten years after the same become salable as aforesaid. The residue may be sold at any time after the expiration of said ten years. The legislative assembly shall provide for the sale of all school lands subject to the provisions of this article. The coal lands of the state shall never be sold, but the legislative assembly may by general laws provide for leasing the same. The words coal lands shall include lands bearing lignite coal."

The two quarter-sections of land here involved were separately sold to the plaintiffs under contracts dated March 23, 1951. Patents were issued pursuant to such contracts upon payment in full in November 1969.

Prior to sale, the property was advertised pursuant to law (Sec. 15–06–25, N.D. C.C.) in a local newspaper. The notice contained the following language:

"All coal and fifty per cent of all oil, natural gas, or minerals on or underlying such land is reserved by the State. . . ."

On March 23, 1951, the plaintiffs were the successful purchasers and they received two contracts in writing from the Board of University and School Lands, both containing the following language:

". . . The grantor, however, reserves to itself fifty (50) per cent of all oil, natural gas, or minerals which may be found on or underlying such land as required by Chapter 149 of the Session Laws of North Dakota for 1939 as amended by Chapter 165 S.L. of North Dakota for 1941 (Sec. 38–0901, Code 1943), together with the right of ingress and egress at all times for the purpose of mining, drilling, exploring, operating and developing said land for oil, gas, and other minerals, and storing, handling, transporting and marketing the same therefrom with the right to remove from said land all the Grantor's property and improvements."

When payment was made in full on the contracts, two patents were issued, dated November 7, 1969, each containing the following:

". . . reserving and excepting from the operation of this grant all rights and privileges vested in the State of North Dakota under the provisions of the constitution and laws of said state, including but not limited to 50% of all oil, natural gas and other minerals which may be found on or underlying such land. Both parties hereto specifically intend that the word 'minerals' as used in this reservation includes such clay, coal and uranium as were included within the meaning of that term prior to July 1, 1955."

The State first contends that the entire sale was invalid, since the land in question was "coal land" which could not be sold under the provisions of Section 155 of the Constitution of North Dakota, quoted above. Similar contentions by the State in State v. Oster, 61 N.W.2d 276 (N.D.1953), and in Permann v. Knife River Coal Mining Co., 180 N.W.2d 146 (N.D.1970), were unsuccessful. The State attempts to distinguish these cases on the ground that the facts are different, particularly in that the State Engineer, in 1917, had made a determination that this particular land was "coal land" and had reported this determination to the Board of University and School Lands. The State thus claims that the act of its agency, the Board of University and School Lands, was a nullity because it was forbidden to make the sale in question.

All of the evidence in this case was stipulated. The trial court made findings of fact, among which are the following:

"The Court finds that said State Land Board did by official act of the Board on January 25, 1951, approve the sale of

said lands, and that on the 23rd day of March, 1951, offered the land for sale at public auction. Further, that on the 19th day of April, 1951, the Plaintiffs being the successful bidders thereon did enter into the separate Contracts, hereinbefore mentioned, in writing with the Board of University and School Lands of the State of North Dakota for the purchase of these lands.

"That the Court finds that the State Land Board did follow all legal procedures in the selection, advertising, and sale of said lands and did by official act of the Board approve the sale of said lands.

"The Court further finds that after execution and delivery of said Contracts, that the said Plaintiffs herein entered into the possession of said properties and have been in possession thereof ever since. That the Plaintiffs have been in possession of the property under the Contracts and the subsequent Patents for over 21 years.

"That the Court further finds that at some time in the year 1951, after the Plaintiffs had come into possession of the land, the Plaintiff John M. Haag, did while dynamiting for the construction of a spring on the property, discover that there was some coal deposits in the land, and that according to the evidence, such discovery was made subsequent to the sale of said property to the Plaintiffs. That thereafter, the Plaintiffs did use some coal for their personal use, and that the Coal Leases hereinbefore mentioned were acquired and placed upon the property in the year 1961.

"That the Court further finds that at the time of the approval of the sale of this land, the State Board of University and School Lands had in its possession a report of the State Engineer, which is Exhibit # 8 in this case. That said report shows that it was filed with the State Land Board on the 12th day of February, 1918.

"That the Court has examined said Exhibit and that there appears thereon the report of the State Engineer regarding the N½ of Section 36, Twp. 142, Range 84. That said report, under the column called indication, does not indicate or designate any specific finding of coal on the property, which is the subject of this action. That the report designates certain coal indications in the general area of the land and reports a show of coal upon Section 30 in the next Township to the East. That said report further concludes and shows that there was no coal in the wells on the said property. That the Court does find that under the column in said report entitled recommendations, that the State Engineer did list this land as coal land.

"That the Court further finds that the State Engineer's report, Exhibit # 8, as it applies to this land is vague and indefinite, and that said report contains a disclaimer as to the accuracy of said findings, and contains a general statement that the investigation made was superficial.

"That the Court further finds that the Report, Exhibit # 8, was furnished to the State Land Board to assist them in making a determination whether or not said land constituted coal land.

"The Court further finds that there was no other evidence introduced showing any further action or reports that would have been available to the State Land Board concerning the existence of coal on the land prior to its sale, nor was there any evidence introduced showing that the Land Board had by official action made an official classification of the land as coal land.

"That the Court further finds that said report being available to the State University and School Lands was presumptively examined by them for the purpose of assisting them in a determination of whether said land was coal land; and therefore, the evidence

presented in this case is insufficient to show that the land was known at the time of the sale to contain valuable coal and minerals and that same would be profitable to mine and in sufficient quantity to justify the expense of its extraction.

"The Court further finds that there was no evidence introduced to show that either party acted fraudulently, or with any collusion nor was there any other conduct or any mistake of law or fact involved in the transaction.

"That the Court, therefore, further finds that at the time of the selection and authorization of sale by the State Land Board that the State Land Board, after having examined the report that they had available, did make a good faith determination based upon said report that said land was not valuable as coal lands and did by official act of the Board authorize the sale."

Pertinent statutes and a constitutional provision of North Dakota read as follows:

"Whenever the board of university and school lands shall request the state engineer to investigate any particular tract of land granted to the state under the Enabling Act, for the purpose of determining whether or not it is coal-bearing land within the meaning of the constitution, he shall investigate and report his conclusions and findings to the board, but in making such investigations and reports, he, whenever practicable, shall call to his assistance, and shall consult with, the dean of the school of mines of the college of mining and engineering of the state university, and the professor of geology at the agricultural college." Sec. 61–03–07, N.D.C.C.

"The board of university and school lands, with the assistance of the state geologist, shall ascertain and determine the quantity and description of all lands under its control on which coal exists and shall compile and keep a statement and schedule of all such lands." Sec. 15–05–07, N.D.C.C.

". . . [the Board of University and School Lands] shall have control of the appraisement, sale, rental and disposal of all school and university lands, . . ." Sec. 156, N.D. Constitution. (See also Sec. 15–01–02, N.D.C.C.)

■ It is plain beyond doubt from these statutes and constitutional provision that while the State Engineer is required, upon request, to investigate and make a report of his conclusions and findings to the Board of University and School Lands, and while the State Geologist is required to assist the Board of University and School Lands, it is that board, and not the State Geologist and not the State Engineer, which is to make a determination of which school lands are "coal lands" and which are not. While it is true, as the State claims, that in *Permann* the determination was made by the State Engineer that the lands in question were not coal lands, yet that is not the only reason given in *Permann* for sustaining the sale. Here, as in *Permann*, "There is no finding of fact here that the coal was valuable, nor that it would have been profitable to mine, nor that coal existed in sufficient quantity to justify the expense of mining at or before the time the contracts were made." There, as here, ". . . prior to such sales neither the State nor the plaintiff was aware that these lands contained coal," and there is no showing that either party acted fraudulently or through any mistake of law or fact. There, as here, ". . . the determination of the State that these lands were not coal lands was legally made," these lands were legally subject to sale, and "the title conveyed to plaintiff was legal and cannot be defeated by subsequent discovery of coal."

■ We are satisfied that the existence of a recommendation or report by the State Engineer that lands are "coal lands," in the absence of other evidence, is

not conclusive on the Board of University and School Lands; that the Board of University and School Lands has the duty to make a determination as to whether land is or is not "coal land"; and that its determination and the issuance of its contract to a purchaser are conclusive on the State, in the absence of fraud or bad faith, regardless of the existence of such recommendations and regardless of the subsequent discovery of coal on the lands in question. State v. Oster, *supra*; Fuller v. Board of University and School Lands, 21 N.D. 212, 129 N.W. 1029 (1911).

■ Even if the question were doubtful, we would be constrained to follow the findings of the trial court, since those findings certainly are not "clearly erroneous." Rule 52(a), N.D.R.Civ.P.

■ No question of fraud is raised. The State contends that there was a mutual mistake of fact, but such contention was raised and held unavailing in *Permann,* and we similarly hold it unavailing here. There is nothing in the record to indicate that the property here in question was commercially valuable for coal mining at the time of the making of the contract. Subsequent discovery of commercially valuable deposits, or new discoveries making formerly noncommercial deposits profitable to mine, would not retroactively create a mistake of fact. Permann v. Knife River Coal Mining Co., *supra;* State v. Oster, *supra;* Colorado Coal & Iron Co. v. United States, 123 U.S. 307, 8 S.Ct. 131, 31 L. Ed. 182 (1887).

The second question before us is whether the State successfully reserved either 100 per cent of the coal, as specified in the advertisement for sale prior to the sale, or 50 per cent of the coal and other minerals, as specified in the contracts and patents.

No justification for the claim of retention of 100 per cent of minerals is presented by either party, except a suggestion by the State that the discussion in Beulah Coal Mining Co. v. Heihn, 46 N.D. 646,

180 N.W. 787 (1920), as to severance of a mine from the surface might have led the Board of University and School Lands to believe that it could comply with the prohibition against selling "coal lands" by selling the surface and retaining the coal in its entirety.

We find no statutory authority for a reservation of 100 per cent of coal or other minerals, and therefore find that the State did not retain all of the coal. Convis v. State, 104 N.W.2d 1 (N.D.1960).

The State's claim of 50 per cent of the coal and other minerals is based upon the specific language of Section 38–09–01, N. D.C.C., which reads:

"In every transfer of land, whether by deed, contract, lease, or otherwise, by the state of North Dakota, or by any department thereof, fifty percent of all oil, natural gas, or minerals which may be found on or underlying such land shall be reserved to the state of North Dakota. Any deed, contract, lease, or other transfer of any such land made after February 20, 1941, which does not contain such reservation shall be construed as if such reservation were contained therein. The provisions of this section shall apply to all lands owned by this state or by any department thereof regardless of how title thereto was acquired."

■ That this statute is applicable to coal there can be no doubt. Coal is a mineral, under the provisions of this section. Abbey v. State, 202 N.W.2d 844 (N.D. 1972).

The determination of the question as to whether the State's attempted reservation of 50 per cent of the oil, gas, and minerals (including coal) is valid, requires an extended discussion of our Constitution, statutes, and case law on the powers of the Board of University and School Lands as to sale of original grant lands.

Fuller v. Board of University and School Lands, *supra,* construed the statutes

specifying the powers of the board, and held that its actions were quasi-judicial and final in the absence of fraud and collusion. The refusal of the board to approve a contract of sale was therefore held not subject to review by mandamus.

In State v. Oster, *supra*, the court dealt specifically with the constitutional provision (former Section 155) and the statute, Section 15–0506, N.D.R.C.1943 (now Section 15–05–06, N.D.C.C.), which prohibited the sale of "coal lands." The board had sold original grant lands and had provided in its contract (but not in the subsequent patent), "That if the described land shall be found to be 'coal land' and that the same has been sold in violation of Section 155 of the Constitution of the State of North Dakota, then, and in that case the said land shall immediately revert to the State, and this contract shall at once become null and void." The deed provided only that the State "reserved and excepted from the operation of this grant all rights and privileges vested in the State of North Dakota under the provisions of the constitution and the laws of said state." Thirty-four years after the sale, the State claimed that the lands were "coal lands" and sued to cancel the patent. In deciding the case this court placed some reliance upon the provision of Section 15–0806, N.D.R.C.1943, that any sale made by mistake or not in accordance with law, or obtained by fraud, may be set aside and *the contract of purchase* shall be declared to be of no effect. The court specifically held that "There is no statutory provision for avoiding a patent issued after an approval and confirmation of the contract for sale." The court further quoted from *Fuller, supra,* and Federal cases to the effect that a determination by a board such as the Board of University and School Lands that land is subject to sale is final, and concluded that no right to cancel the sale can be reserved.

*Oster* thus is not authority for a decision on the question we have here—whether the State may *reserve* a portion of the coal in the sale of original grant lands. It is authority that the State may not make a conveyance which is subject to cancellation solely because of the subsequent discovery of coal.

In Convis v. State, *supra*, the principal controversy arose from an attempt by the State Board of University and School Lands to claim ownership of all the gravel in a tract of original grant land sold under contract to the plaintiffs. The board had attempted to reserve 100 per cent of all minerals, including gravel. This court, however, held that the board could reserve only what the statutes, *including* Section 38–0901, N.D.R.C.1943, permitted, and that gravel was not a mineral and therefore no gravel was reserved. This court therefore affirmed the holding of the district court as follows:

"1. That patent be issued to plaintiffs containing only the reservation provided for by Sec. 38–0901, NDRC 1943.

"2. That the defendants be forever debarred and enjoined from further asserting any right, title or interest *in the gravel.*" [Emphasis added.] 104 N.W. 2d 1, at 5.

We point out that Section 38–0901, N.D.R.C.1943, is the same statute as Section 38–09–01, N.D.C.C., with which we are here concerned.

It thus will be seen that the actual holding in *Convis* by this court is to *affirm* the lower court's holding that reservation of 50 per cent of "oil, natural gas, or minerals" in sales of original grant lands is proper. However, this court also said, in an exercise in pure dictum:

"The reservations in the contract in question as quoted above included 'coal.' The sale of 'coal lands' is prohibited both by Sec. 155 of the State Constitution and by Secs. 15–0506 and 15–0620, NDRC 1943. No coal has been 'discovered' in the land in question. The purchaser is now entitled to receive a patent to the land and we hold under the rule

announced by this court in State v. Oster, N.D., 61 N.W.2d 276, that under the facts the defendant is estopped at this time from asserting a right to such reservation." 104 N.W.2d 1, at 5.

Thus we see that a holding in *Oster* that the board may not issue a deed defeasible upon discovery of coal became a dictum (in *Convis*) that the board could not reserve 50 per cent of the coal, even though the affirmance of the lower court constituted a holding to the contrary.

Such was the state of the law when Permann v. Knife River Coal Mining Co., *supra*, came before this court. In *Permann*, the board had sold original grant land and reserved 50 per cent of the oil, gas, and minerals.

The questions raised in *Permann* which relate to our discussion were (1) whether sales of original grant lands under contract became void by reason of subsequent discovery of coal, and (2) if the contracts were valid, whether the reservation of 50 per cent of "all oil, natural gas, or minerals" had the effect of reserving 50 per cent of the oil, gas, and minerals (including coal) to the State.

Relying upon *Convis* and *Oster*, which we have discussed above, this court held:

"In this case the mandate of the Constitution is that in conveying school grant lands, coal lands belonging to the state shall never be sold. The reservation of coal lands to the state in a contract or patent conveying school lands is void because it is in contravention of the constitutional and statutory provisions prohibiting the sale of 'coal lands,' and the contracts and patent must be construed as though they contained only the reservation required by statute (§ 38-0910, N.D.R.C.1943) as limited by the Constitution (§ 155, N.D.Const.) and the State is estopped from asserting a right to the reservation of coal. Convis v. State, 104 N.W.2d 1 (N.D.1960); State v. Oster, 61 N.W.2d 276 (N.D.1953)."

Permann v. Knife River Coal Mining Co., 180 N.W.2d 146, at 157.

We believe this is a misreading of *Convis* and *Oster*, as we have indicated.

The *Permann* decision then goes on to approve the trial court's decision that the determination of whether the property was coal land was one for the board to make, that the determination was to be based upon information available to the board at the time it was made, that a provision identical to the one in *Oster* providing for a reversion in case of discovery of coal was invalid, and concluded that "the reservation in [Permann's] patent attempting to reserve the coal to the State was beyond the power of the State, is void, and does not constitute a reservation of coal," and affirmed the judgment of the district court so holding.

Finally, we come to Abbey v. State, *supra*. It held, as we have indicated above, that coal is a mineral. As in *Permann*, it involved lands sold by the Board of University and School Lands with a reservation of 50 per cent of all oil, gas, and minerals. It held, first of all, that the land involved was "public building land" not subject to Section 155 of the Constitution forbidding sale of "coal lands." *Abbey* held that the decision in *Permann* did not apply to the sale of public building land, and that the reservation of 50 per cent of the "minerals" under 38-0901, N.D.R.C.1943, included coal and was proper.

We can sum up the pertinent holdings of these cases on two points as follows:

(1) A determination of the board that original grant lands are not "coal lands" is conclusive in the absence of fraud or bad faith (*Fuller, Oster, Permann*).

(2) The issuance of a contract for deed (*Permann*) or a patent to the purchaser is conclusive on the State and cannot be defeated, and the instrument cannot be cancelled, because of the subsequent discovery of coal upon the land (*Oster, Permann, Abbey*).

Since there is unanimity in our case law on the foregoing points, the only question remaining is whether the State can validly by statute make a reservation in its contracts and patents of a portion of the coal in original grant lands, if any coal be subsequently found therein, even though it is forbidden to sell "coal lands."

█ *Permann* and *Abbey* hold that a determination at one point in time that the particular lands are not coal lands means only that at that time the mining of coal is not commercially feasible or profitable. Both cases recognize that coal may thereafter be discovered and that such discovery or improvements in technology at a later date may make it commercially feasible to mine coal; and that such subsequent developments do not authorize the State to cancel the deed on that account. These are matters of common sense, as well as law. We can also take judicial notice of the fact that most of the western half of this State is underlain with coal veins, some near the surface, some hundreds of feet underground and not commercially mineable with present technology.

█ Of all the cases we have discussed, only one (*Permann*) holds that the board cannot reserve any coal in lands sold after the board's determination that they were not "coal lands," and it relies upon the ruling in *Oster* that the State cannot cancel a deed upon discovery of coal and upon dictum in *Convis*. We reverse the holding of *Permann*, and hold that the provision of Section 38–09–01, N.D.C.C., applies according to its terms to all sales of State lands, and that the fact that the original grant lands may have been designated as not being "coal lands" does not alter the right of the State to make such reservations. We believe that 38–09–01, N.D.C.C., was intended to apply to all transfers of land by the State, including original grant lands.

█ Once we recognize that land may not be coal land (i. e., land bearing coal which can be profitably extracted) at one time, but may become coal land at a later time, and that a sale of that land may be made at the former time and yet not be subject to cancellation at a later time because discovery of coal therein and advances in coal-extraction technology have metamorphosed it into "coal land," then there is simply no logic in saying that the State cannot reserve coal in land which is not coal land at the former time. The basis of the decision in *Permann* (aside from misplaced reliance upon *Oster* and *Convis*) seems to be that if the State is forbidden to sell "coal lands," the State must not only determine that they are not coal lands when they are sold, but the State also must never find out (by collecting royalties or otherwise) that the lands have ·coal in them. But, as we have pointed out above, we already know that much of this State is underlain with coal, and yet the law is clear that the determination of whether land is "coal land" is not based upon the existence of coal under it, but upon whether or not the coal is subject to profitable development at a particular time (the time of the contract for sale). Once this is admitted, and it is admitted in all‾ of the coal cases discussed above, and once it is admitted that future discoveries and future technology may make coal subject to development at a later time even though it was not subject to profitable development at the time of the contract, there is no logical reason for holding that the State cannot reserve coal in lands which contain coal but are not "coal lands" (as defined in our case law) at the time of the contract.

In State v. Amerada Petroleum Corp., 71 N.W.2d 675 (N.D.1955) (which involved land acquired by foreclosure and not original granť land), we held the following quoted language pertinent:

"The State, of course, may own and hold property. Unless prohibited by some constitutional provision it may dispose of it just as any citizen may dispose of his property." [Quoted from Herr v. Rudolf, 75 N.D. 91, 25 N.W.2d 916, 919, 169 A.L.R. 1388.]

"The proprietary rights of a state are as absolute and unqualified as those of an individual. It may, in the absence of any self-imposed restrictions in its constitution, sell and dispose of its property upon its own terms and conditions, . . ." [Quoted from case law in State ex rel. Equity Farms, Inc. v. Hubbard, 203 Minn. 111, 280 N.W. 9, 12.]

We hold here that Section 155 of the Constitution as it existed prior to its amendment on June 28, 1960, did not restrict the power of the State pursuant to statute to reserve all or any portion of the oil, gas, and minerals (including coal) in its original grant lands, and that the holding to the contrary in *Permann* is set aside.

The foregoing discussion of Section 155 of the North Dakota Constitution relates only to the sale of State school lands prior to the amendment of Section 155 by amendment Article 71, approved by the electorate on June 28, 1960. Since such amendment, the language of Section 155, as amended, permitting the sale of all State school lands, including coal lands, under limitations expressed therein, prevails.

Affirmed in part and reversed in part and remanded to the district court for further proceedings consistent with this opinion.

ERICKSTAD, C. J., and TEIGEN and PAULSON, JJ., concur.

KNUDSON, Judge (concurring in part and dissenting in part).

I concur in that part of the opinion affirming the judgment of the trial court quieting title in the plaintiff to the land in question, but I dissent from that part of the opinion holding valid the reservation by the State of fifty per cent (50%) of the coal.

I adhere to the opinion of this Court in Permann v. Knife River Coal Mining Co., 180 N.W.2d 146 (N.D.1970), wherein we affirmed the judgment of the trial court holding that the reservation in the patent attempting to reserve the coal to the State was beyond the power of the State, was void, and did not constitute a reservation of coal.

The State cannot reserve that which it cannot sell. It is not necessary to determine whether or not "coal" is a "mineral" and therefore includable under the provisions of § 38–0901, N.D.R.C.1943, reserving to the State "all oil, natural gas, or minerals," which reservation is set forth in the contracts and the patent, for the reason that Section 155 of the North Dakota Constitution prohibits the sale of "coal lands" and therefore such reservation of coal is contrary to the constitutional and statutory provisions.

A purchaser from the State acquires certain contract rights and upon full payment of such contract is entitled to a patent under Section 158 of the North Dakota Constitution. Any clause in any contract for the sale of school grant lands, or in the patent to such lands, in direct contravention of constitutional provisions, is unconstitutional and ineffective insofar as it relates to the sale of school grant lands. The Constitution, and the statutes enacted in compliance therewith, is the authority under which the officers of the State act, and not the recitals in the contract or in the patent that determine its scope and validity. It appears that it would be incongruous to sell land forbidden by the Constitution to be sold and insert in the contract or patent thereto the reservation to the State of that which was repugnant to the constitutional prohibition.

The substance of the contract or patent may not be varied by the officers executing it, and the powers of public officers are to be measured by the terms and necessary implications of the grant conferring the power on them. In this case the mandate of the Constitution is that in conveying school grant lands, coal lands belonging to the State shall never be sold. The

reservation of coal lands to the State in a contract or patent conveying school lands is not in compliance with constitutional or statutory provisions, and the contracts and patent must be construed as though it contained only the reservation required by statute (§ 38–0901, N.D.R.C.1943) as limited by the Constitution (§ 155; N.D.Const.) and the State is estopped from asserting a right to the reservation of coal. Convis v. State, 104 N.W.2d 1 (N.D.1960) ; State v. Oster, 61 N.W.2d 276 (N.D.1953).